IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:09-CT-3142-FL

| | | |
|---|---|---|
| LASCELLES SOMIE and ORAL MALCOLM, | ) ) ) | |
| Plaintiffs, | ) ) | **MEMORANDUM IN SUPPORT OF THE GEO DEFENDANTS' MOTION TO DISMISS** |
| v. | ) ) | **Fed. R. Civ. P. 12** |
| THE GEO GROUP, INC., et al., | ) ) | |
| Defendants. | ) | |

Defendants The GEO Group, Inc., George Snyder, David Farmer, David Blevins, and Carolyn Wolf (collectively "GEO Defendants") state the following grounds in support of their Motion to Dismiss:

## STATEMENT OF THE CASE

Plaintiffs initiated this action on August 17, 2009 by filing a Complaint in the United States District Court for the Eastern District of North Carolina. Plaintiffs' Complaint alleges that the Defendants, by refusing to provide plaintiffs with a diet that complies with the tenants of the 12 Tribe Rostafarian religion, violated rights guaranteed to Plaintiffs under the Religious Freedom Restoration Act and the Religious Land Use and Institutionalized Persons Act. Plaintiffs also claim Defendants actions violated the terms of the contract between GEO and the Bureau of Prisons and that Plaintiffs, as third party beneficiaries of that contract, may enforce the terms of the Rivers contract.

## STATEMENT OF ALLEGATIONS

Plaintiffs Lascelles Somie and Oral Malcom are inmates at Rivers Correctional Institution ("Rivers"). Somie and Malcom claim to be "sincere and devoted adherents and practitioners of the 12 Tribe Rastafarian branch of the Rastafarian religion." (Compl. ¶ 15.) As adherents and practitioners of the 12 Tribe Rastafarian branch of the Rastafarian religion, Plaintiffs claim that they must comply with certain dietary restrictions. (Compl. ¶¶ 16-20.) At Plaintiffs' request, they were provided with a dietary plan that met the requirements of their religion. (Compl. ¶¶ 22-23.) However, "[a]s a result of the Plaintiffs failing to attend three group meetings" Plaintiffs were removed from the religious dietary plan. (Compl. ¶ 34.)

## ARGUMENT

### I. PLAINTIFFS FAILED TO PROPERLY SERVE DEFENDANT SNYDER

Plaintiffs' claims against Defendant George Snyder must be dismissed because Plaintiffs failed to properly serve Snyder with a copy of the Summons and Complaint. Plaintiffs caused a copy of the Summons and Complaint via certified mail to Snyder at Rivers. However, prior to service being completed, Snyder retired from his position as Warden at Rivers and has not appointed anyone at Rivers to act as his agent for the acceptance of service of process. Therefore, the Court must dismiss Snyder from this action for inadequate service of process.

Federal Rule 4(e), which applies to service upon individuals, provides, in pertinent part:

> Unless federal law provides otherwise, an individual-other than a minor, an incompetent person, or a person whose waiver has been filed-may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides

there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e).

In turn, North Carolina's Rule 4(j)(1) provides, in pertinent part, that service may be made upon an individual:

>    a. By delivering a copy of the summons and of the complaint to the natural person or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.
>
>    b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.
>
>    c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee.
>
>    d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering to the addressee, and obtaining a delivery receipt.
>
>    e. By mailing a copy of the summons and of the complaint by signature confirmation as provided by the United States Postal Service, addressed to the party to be served, and delivering to the addressee. Nothing in this sub-subdivision authorizes the use of electronic mailing for service on the party to be served.

N.C. R. Civ. P. 4(j)(1).

Here, Plaintiffs did not serve Snyder in accordance with the manner prescribed under Federal Rule 4(e), or in the proper manner prescribed by North Carolina's Rule 4(j). Snyder was not served with a copy of the Summons and Complaint personally; a copy of the Summons and Complaint sent by certified mail, return receipt requested, was not delivered to him; nor was a copy of the Summons and Complaint delivered to an individual appointed by Snyder to accept

3

service of process on his behalf. (Snyder Dec. ¶ 4, attached hereto as Exhibit A.) Therefore, Plaintiffs failed to properly serve Snyder, and, for this reason, the claims against Snyder should be dismissed.

## II.     PLAINTIFFS FAILED TO PROPERLY SERVE GEO

Plaintiffs' claims against GEO must be dismissed because they failed to properly serve GEO with a copy of the Summons and Complaint. The Federal Rules provide that in order to properly serve a corporation such as GEO via certified mail, return receipt requested, the Summons and Complaint must be addressed and delivered to one of a number of specified individuals, and not the corporation generally. In this case, the Summons and Complaint were not addressed and delivered to the appropriate individuals, but instead they were sent to GEO generally. Therefore, the Court must dismiss GEO from this action for inadequate service of process.

Federal Rule 4(h), which applies to service upon corporations associations, provides, in pertinent part:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> (1)     in a judicial district of the United States:
>
> (A)     in the manner prescribed by Rule 4(e)(1)[1] for serving an individual; or
>
> (B)     by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process

---

[1] Rule 4(e)(1) allows a party to effect proper service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]"

> and — if the agent is one authorized by statute and the statute so requires — by also mailing a copy of each to the defendant; or

Fed.R.Civ.P. 4(h).

Pursuant to Rule 4(e)(1) of the Federal Rules, service can be properly completed if it complies with the applicable state law for service of process. North Carolina Rule of Civil Procedure 4(j)(6) provides, in pertinent part, that service may be

> Domestic or Foreign Corporation. – Upon a domestic or foreign corporation by one of the following:
>
> > a. By delivering a copy of the summons and of the complaint to an officer, director, or managing agent of the corporation or by leaving copies thereof in the office of such officer, director, or managing agent with the person who is apparently in charge of the office.
> >
> > b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.
> >
> > c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served as specified in paragraphs a and b.
> >
> > d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the officer, director, or agent to be served as specified in paragraphs a. and b., delivering to the addressee, and obtaining a delivery receipt. As used in this sub‑subdivision, "delivery receipt" includes an electronic or facsimile receipt.

N.C. R. Civ. P. 4(j)(6).

Here, Plaintiffs did not serve GEO in accordance with the manner prescribed under Federal Rule 4(h) or in the proper manner prescribed by North Carolina's Rule 4(j). Because Plaintiffs attempted to serve GEO via mail, the only provision that could give rise to appropriate service of process is Rule 4(j)(6)(c) of the North Carolina Rules of Civil Procedure. A party

5

"relying on the service of a notice by mail must show strict compliance with the requirements of the statute." *In re Appeal of Harris*, 273 N.C. 20, 24, 159 S.E.2d 539, 543 (1968). The Return of Service filed in this case (DE# 9) demonstrates that the copy of the Summons and Complaint mailed to NCACC did not strictly comply with the requirements of Rule 4(j)(6) because they were not "addressed to the officer, director, agent or member of the governing body to be served as specified in paragraphs a and b." Therefore, Plaintiffs failed to properly serve GEO, and, for this reason, the claims against GEO should be dismissed.

### III. PLAINTIFFS' CLAIMS ARE BARRED BY THE PRISON LITIGATION REFORM ACT'S PROHIBITION ON CLAIMS FOR MENTAL OR EMOTIONAL INJURY WITHOUT A RELATED PHYSICAL INJURY

The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This provision has been applied to claims similar to those raised in this action. *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 605-06 (5th Cir. 2008); *Van Wyhe v. Reisch*, 536 F. Supp. 2d 1110, 1126 (D.S.D. 2008) (applying § 1997e(e) to removal from religious diet); *Sisney v. Reisch*, 533 F. Supp. 2d 952, 973-74 (D.S.C. 2008); *Scott v. Ozmint*, 467 F. Supp. 2d 564, 569 (D.S.C. 2006). Plaintiffs claim that as a result of Defendants actions they have "suffered significant mental and emotional distress." (Compl. ¶ 44.) However, there are no allegations in the complaint that the Defendants' actions have caused the plaintiff any physical harm. Therefore, the Prison Litigation Reform Act requires the Court to dismiss Plaintiffs' claims.

## IV. THE DEFENDANTS, AS PRIVATE ACTORS, ARE NOT SUBJECT TO THE PROVISIONS OF RFRA

Plaintiffs claim that the GEO Defendants violated the provisions of the Religious Freedom Restoration Act ("RFRA") by removing them from Rivers' religious diet program. RFRA precludes the federal government[2] from imposing a substantial burden upon "a person's exercise of religion[.]" 42 U.S.C. § 2000bb-1(a). RFRA's provision apply to any "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States[.]"[3] Id. at §2000bb-2(a).

Plaintiffs' RFRA claim fails because the GEO Defendants do not fall within RFRA's definition of "government." GEO and its employees are not federal actors. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001); *Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006). As GEO and its employees are not federal actors, they cannot qualify as a "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States[.]" *See Hall v. American National Red Cross*, 86 F.3d 919 (9th Cri. 1996) (discussing when a private corporation falls under RFRA's definition of an "instrumentality" of the United States), *cert. denied*, 519 U.S. 1010. The Court should dismiss Plaintiffs RFRA claim because their inability to establish that the GEO Defendants are federal actors causes the claim to fail as a matter of law.

---

[2] In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court held that the RFRA is unconstitutional as to state and local governments; however, Flores has not been interpreted to preclude RFRA claims against the federal government. *See generally*, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

[3] Plaintiffs' Complaint does not allege that the GEO Defendants fall within this definition.

7

## V. THE DEFENDANTS ARE NOT SUBJECT TO THE PROVISIONS OF RLUIPA BECAUSE THEY ARE NOT AFFILIATED WITH A STATE OR LOCAL GOVERNMENT

Plaintiffs' also claim that the GEO Defendants violated provisions of the Religious Land Use and Institutionalized Person Act ("RLUIPA"). However, like RFRA, RLUIPA does not apply to the GEO Defendants. Therefore, Plaintiffs' RLUIPA claim fails as a matter of law and should be dismissed.

RLUIPA, passed in response to the Supreme Court's decision in *Boerne*, precludes the imposition of a substantial burden upon a person's religious beliefs by "a State, county, municipality, or other governmental entity created under the authority of a state," and "any branch, department, agency, instrumentality or official, thereof, and "any other person acting under color of State law." 42 U.S.C.2000cc-5(4). Federal courts have held that RLUIPA only applies to state and local governments, not a federal prison. *See Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058 (9th Cir. 2008); *Sample v. Lappin*, 424 F.Supp.2d 187, 192 n. 3 (D.D.C. 2006); *Ish Yerushalayim v. United States*, 374 F.3d 89, 92 (2d Cir. 2004). Based upon the statute's language, RLUIPA does not apply to GEO because it not a state or local government. Therefore, Plaintiffs RLUIPA claim fails as a matter of law and must be dismissed.

## VI. PLAINTIFFS ARE NOT THIRD-PARTY BENEFICIARIES OF THE RIVERS CONTRACT

Plaintiffs seek to enforce the terms of the Rivers Contract as third-party beneficiaries. Plaintiffs' do not discuss why they qualify as third party beneficiaries, but, instead, assert that "[a]s third party beneficiaries to the contract [between GEO and the BOP] requiring the defendants to provide the plaintiffs accommodations under the RFRA and/or RLUIPA, the plaintiffs are real parties in interest and have standing to invoke the contract law claims."

(Compl. ¶ 55.) However, this Court has already decided that Rivers inmates are not third-party beneficiaries of the Rivers Contract. *Mathis v. GEO Group*, 2:08-ct-00021-D (E.D.N.C. Nov. 9, 2009) (attached as Exhibit B). Therefore, Plaintiffs' breach of contract claim should be dismissed.

In cases where a member of the public claim to be a third-party beneficiary of a contract between a private company and the government, the member of the public must not only demonstrate that he is the intended beneficiary, but it must also establish that the language of the contract expressly provides for liability to a third-party. The United States Supreme Court first discussed the higher standard for third-party breach of contract claims against government contractors in *German Alliance Insurance Company v. Home Water Supply Company*, 226 U.S. 220 (1912). In *German Alliance*, the plaintiff sought damages from a private company for property damage resulting from fires in Spartanburg, South Carolina. *Id.* at 221. The plaintiff alleged that "the fire could easily have been extinguished and the damage prevented if the water company had complied with its contract [with Spartanburg] and duty to furnish the inhabitants of the city with water for fire protection. *Id.* Although not a party to the contract between the governmental entity and the private company, the plaintiff sought to recoup its losses on the theory that its insureds, citizens of Spartanburg, were third-party beneficiaries to the contract. *Id*.

The Supreme Court noted that "the majority of American courts hold that the taxpayer has no direct interest in such agreements, and therefore cannot sue *ex contractu*." *Id.* at 228-29. Instead, "[t]he interest which each taxpayer had therein was indirect – that incidental benefit only which every citizen has in the performance of every other contract made by the government under which he lives, but for the breach of which he has no private right." *Id*. at 231. While a

9

government contractor may be liable in tort to members of the public, "for acts of omission and breaches of contract, he would be responsible to the municipality alone." *Id.*

The Supreme Court's holding protects the ability of government contractors to limit their duties and liabilities to those set forth in the contract. Allowing members of the public to sue government contractors as third-party beneficiaries "would unduly extend contract liability, would introduce new parties with new rights, and would subject those contracting with municipalities to suits by a multitude of persons for damages which were not, and, in the nature of things, could not have been, in the contemplation of the parties." *Id.* at 232. Thus, absent an express agreement between the government and the contractor to the contrary, members of the public may not maintain actions against government contractors as third-party beneficiaries. *Id.*[4]

---

[4] The *German* Alliance holding was subsequently incorporated into the Restatement (Second) of Contracts:

> § 313 Government Contracts
> (2) In particular, a promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless:
> (a) the terms of the promise provide for such liability; or
> (b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the policy of the law authorizing the contract and prescribing remedies for its breach.
>
> Comment:
>
> a. Rationale … Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested. In case of doubt, a promise to do an act for or render a service to the public does not have the effect of a promise to pay consequential damages to individual members of the public unless the conditions of Subsection (2)(b) are met.

Restatement (Second) Contracts § 313. The original Restatement of Comments contained similar language. This language was adopted by the North Carolina Supreme Court in *Matternes*

Accordingly, for a member of the public to bring a third-party claim against a government contractor: "(1) the contract must reflect the intent to benefit the alleged third-party beneficiary, and (2) the contract must give the third-party the direct right to compensation or to enforce that right against the promisor." *State of Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997) (citing *Baudier Marine Elec. v. United States*, 6 Cl. Ct. 236, 249 (1984)). This two-part test applies only in circumstances where "members of the public bring suit against promisors who contract with the government to render a public service. In this situation, members of the public are considered to be incidental beneficiaries unless they can show a direct right to compensation." *Id.* at 1273 n.6.

### A. PLAINTIFFS ARE NOT INTENDED THIRD-PARTY BENEFICIARIES OF THE RIVERS CONTRACT

Members of the public cannot enforce the terms of a government contract when the contract disclaims liability to third parties. For example, in *Moore v. Gaither*, 767 A.2d 278 (D.C. 2001), prisoners incarcerated at a private correctional institution attempted to bring a third-party breach of contract action against a government contractor for breach of the agreement between the government contractor and the District of Columbia's Department of Corrections. The court found that individual members of the public, such as the prisoners, are incidental beneficiaries of government contracts and that in order to raise a third-party beneficiary claim, the prisoners must demonstrate a clear or manifest intent to treat them as intended beneficiaries. *Id.* at 287. As the contract at issue in that case expressly disclaimed bestowing any rights upon third-parties, the prisoners' claim failed. *Id*.

---

*v. City of Winston-Salem*, 286 N.C. 1, 14-15, 209 S.E.2d 481, 488-89 (1974). *Accord Fort Lincoln Civic Ass'n. Inc. v. Fort Lincoln New Town Corp.*, 994 A.2d 1055, 1064 (D.C. App. 2008).

11

Similarly, the terms of the Rivers Contract preclude Plaintiffs from establishing that they have enforceable rights under the Rivers Contract. The Rivers Contract states, "[i]n awarding the contract, the Government does not assume any liability to third parties…" (First Am. Compl. Exh. A at 17:22-23.) As in *Moore*, Plaintiffs "cannot reasonably claim the right [they] now [seek] to assert in light of this explicit and. . .dispositive provision." *Id*. at 288. Thus, Plaintiffs' claim for breach of contract fails and should be dismissed.

> B. **PLAINTIFFS CANNOT ESTABLISH THAT THEY HAVE A DIRECT RIGHT TO ENFORCE THE PROVISIONS OF THE RIVERS CONTRACT**

Even if Plaintiffs are intended third-party beneficiaries under the Rivers Contract, their breach of contract claim fails because the First Amended Complaint is devoid of any allegations – factual or otherwise – that the Rivers Contract provides Plaintiffs with a direct right to enforce its provisions. Absent such an allegation, Plaintiffs' fail to state a claim for breach of a government contract under a third-party beneficiary theory.

Third-parties who obtain a benefit from a government contract cannot bring a third-party breach of contract claim unless the contract contains an explicit right to enforce the terms. *Nguyen v. United States Catholic Conference*, 719 F.2d 52 (3d Cir. 1983). In *Nguyen*, the plaintiffs were a group of refugees who received financial benefits from the defendant pursuant to a contract with the federal government. *Id*. at 55. The Third Circuit affirmed the district court's dismissal of the Plaintiffs' third-party breach of contract claim because the plaintiffs "point[ed] to no provision of the grant agreement that reflects the notion that [the defendant] will be liable to refugees should it fail to perform." *Id*. at 55-56.

Similarly, in *Jama v. United States Immigration and Naturalization Service*, 334 F. Supp. 2d 662 (D.N.J. 2004), undocumented aliens held at a privately run facility brought a third-party

breach of contract claim on the grounds that the government contractor failed to adhere to the terms of its contract with the INS. *Id.* at 671-72. The plaintiffs alleged that the contractor violated various provisions of the contract "relating to the hiring, training and supervision of employees; and it imposed on [the contractor] the obligation to ensure the safety and protect various rights of the detainees." *Id.* at 675-76. The court held that while "these provisions, though they show that the INS intended the detainees to benefit under some provisions of the Contract, cannot by themselves show that the parties intended detainees to have rights of action for breach of contract against [the contractor]." *Id.* at 688. Therefore, the plaintiffs' third-party breach of contract claim failed because "[p]laintiffs have not identified any provision or combination of provisions that specifically provide such a right." *Id.*

Plaintiffs' third-party beneficiary claim in this case suffers from the same flaw as the claims raised in *Nguyen* and *Jama*: the Rivers Contract does not provide Plaintiffs with the right to directly enforce its provisions. Therefore, Plaintiffs third-party breach of contract claim fails as a matter of law. Thus, GEO's Motion to Dismiss should be granted.

### C. THIS COURT HAS RECENTLY HELD THAT RIVERS INMATES ARE NOT THIRD PARTY BENEFICIARIES OF THE RIVERS CONTRACT

This Court has recently rejected the position that Rivers inmates are third-party beneficiaries of the Rivers Contract. In *Mathis v. GEO Group*, 2:08-ct-00021-D (E.D.N.C. Nov. 9, 2009) (attached as Exhibit B), the plaintiffs "sought relief from GEO for breach of contract under a third-party beneficiary theory." *Id.* at 34. The Court began its analysis by explaining that "plaintiff bears an 'exceptional' burden to prove that he (a nonsignatory to the federal government contract) is entitled to recover for breach of the government contract between the BOP and GEO under a third party beneficiary theory." *Id.* at 35.

The Court went on to hold that the plaintiff could not meet his exceptional burden because inmates are "[a]t most … an indirect beneficiary" of the terms of the contract. *Id.* at 39. Additionally, the plaintiff's claim failed because "the contract language disclaiming government liability to third parties and making the government contracting officer the only party that may take formal action against the contractor for unsatisfactory performance under the contract reflects the parties' intent to not confer third-party beneficiary status on the inmates." *Id.* at 39. The reasoning that led the Court to reject the third-party beneficiary breach of contract in *Mathis* is equally applicable here. This Court should reach the same conclusion it did in *Mathis* and dismiss Plaintiffs' breach of contract claims.

## CONCLUSION

Based upon the foregoing arguments and authorities, Defendants' Motion to Dismiss should be granted.

This the 11th day of January, 2010.

                              **WOMBLE CARLYLE SANDRIDGE & RICE**
                              *A Professional Limited Liability Company*

By:   /s/ Robert T. Numbers II_____
       JAMES R. MORGAN, JR.
       (N.C. State Bar No. 12496)
       ROBERT T. NUMBERS, II
       (N.C. State Bar No. 34134)
       One West Fourth Street
       Winston-Salem, North Carolina 27101
       Phone: (336) 721-3600
       Fax: (336) 721-3660
       E-mail: jmorgan@wcsr.com
       E-mail: rnumbers@wcsr.com
       *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

This is to certify that on January 11, 2010, a copy of the foregoing **MEMORANDUM IN SUPPORT OF THE GEO DEFENDANTS' MOTION TO DISMISS** was filed with the Clerk of the Court using the CM/ECF system.

It is further certified that on January 11, 2010, a copy of the foregoing **MEMORANDUM IN SUPPORT OF THE GEO DEFENDANTS' MOTION TO DISMISS** was served upon the following non-CM/ECF participant(s) by placing said copy in a postage paid envelope and addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and its contents in the United States Mail at Winston-Salem, North Carolina.

Lascelles Somie
39637-083
Rivers Correctional Institution
P. O. Box 630
Winton, NC 27986
*Pro Se Plaintiff*

Oral Malcolm
39711-083
Rivers Correctional Institution
P. O. Box 630
Winton, NC 27986
*Pro Se Plaintiff*

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*

By: /s/ Robert T. Numbers, II
ROBERT T. NUMBERS, II
(N.C. State Bar No. 34134)
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
One West Fourth Street
Winston-Salem, NC 27101
Phone: (336) 721-3600
Fax: (336) 721-3660
E-mail: rnumbers@wcsr.com
*Attorneys for Defendants*