FILED
FEB 1 9 2010
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:09-CT-3142-FL

LASCELLES SOMIE and ORAL MALCOLM,

  Plaintiffs,

v.

THE GEO GROUP, INC., et al.,

  Defendants.

**PLAINTIFFS' REPLY BRIEF IN OPPOSITION TO GEO DEFENDANTS' MOTION TO DISMISS**

  Plaintiffs Lascelles Somie and Oral Malcolm, appearing pro se, respectfully submit this motion in opposition to defendants GEO Group, Inc., et al., motion in which they are seeking an order to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of civil Procedure. Plaintiff request that his court deny defendants' motion based on the facts, law and argument set forth in this reply brief.

## STATEMENT OF THE CASE

  1. Plaintiffs filed this instant complaint on August 17, 2009. In their complaint, Plaintiffs allege that the Defendants violated their rights to freely practice their religion as provided under the Religious Freedom Restoration Act, (RFRA), and the Religious Land Use and Institutionalized Persons Act, (RLUIPA). Plaintiffs also claim that the defendants actions violated the terms of the contract between GEO and the Bureau of Prisons and that Plaintiffs, as third party beneficiaries of that contract, may enforce the terms of the Rivers contract.

  2. On November 18, 2009, magistrate Judge William A. Webb, issued an order for the U.S Marshalls to make service on behalf of Plaintiffs because they are incarcerated. (See DKT #8).

-1-

3. On January 11, 2010, defendants filed their motion to dismiss pursuant to Fed.R.Civ.P 12.

4. Plaintiffs now file this brief in response to defendants motion to dismiss.

## STATEMENT OF ALLEGATIONS

5. Plaintiffs Lascelles Somie and Oral Malcolm were both raised up on the island of Jamaica, and are sincere and devoted adherents and practitioners of the 12 Tribe Rastafarian branch of the Rastafarian Religion. (Compl. at 15).

6. The teaching of the 12 Tribe beliefs mandates that all its followers adhere to the strict diet as commanded by God in the law covenant given to Moses. The law gives instructions as to what types of fish, poultry or other meats that should be consumed. The law explicitly outlaws the eating of pork or any pork products. (Compl. at 16).

7. Under the 12 Tribe faith, the adherents believe that God's law contains dietary restrictions, and because the law was given by God, the practitioners of this faith believe that disobedience to the dietary laws is both a religious offense and lese-majeste (an offense against the head of state, which in this case would be against God, the sovereign ruler and king). 12 Tribe adherents such as Plaintiffs believe in the law which states that eating of blood was forbidden, and so slaughtered animals had to be bled properly as stated in Leviticus 17:13 and Deuteronomy 12:16; Genesis 9:4; Leviticus 7:26, 17:12; and Deuteronomy 12:23 and 12:25. Plaintiffs believe that the violations of the dietary laws is such a major sin that the penalty was punishable by death. (Leviticus 7:27 and 17:10). (Compl. at 17-19).

8. At all times relevant to this complaint, Plaintiffs recognize that

the religious dietary laws are legitimate, and they have been sincerely practicing this faith their entire lives. (Compl at 20-21).

9. Upon Plaintiffs request for observance of their dietary requirements, Plaintiffs were placed on the Religious Diet Program at defendants prison, and they were given the Kosher Diet, which in this prison, is the only diet recognized by the 12 Tribe Rastafarian faith, as being permissible under the Mosaic Law covenant.

10. Defendants implemented a policy to govern the Religious Diet program at their prison. Under the policy, there are three restrictions, and they are: (1) the inmate may not consume items purchased from the commissary that are not in line with the inmates claimed faith, (2) the inmate may not consume any other inmate's meals or items from their meals that do not conform to the practicing inmate's claimed religious diet, and, (3) the inmate must consume the religious food that is served.

11. Defendants arbitrarily and capriciously implemented additional regulation that is at odds with their established policy on religious diet, and that is, program participants must attend <u>three consecutive weekly services</u>, and forcing group attendance to remain a participant in the Religious Diet Program. (Compl. at 24-29).

12. According to Plaintiff's faith, 12 Tribe Rastas are not mandatorily required to attend group meetings or religious services. Furthermore, the Rasta services held at defendants prisons is not 12 Tribe Rasta services. Plaintiffs did not engage in any of the conduct specified in the established policy that would constitute a violation and removal from the Religious Diet Program. (Compl. at 30-31).

13. As a result of Plaintiffs failing to attend 3 consecutive group

-3-

meetings, the defendants removed them from the Religious Diet Program on December 28, 2008. (Compl. at 34).

14. The removal of Plaintiffs from the Kosher Diet plan, imposed a substantial burden on the Plaintiffs practice of their religious faith. The Plaintiffs have been forced to eat foods served on the main line and forced to eat such foods just to stay alive. (Compl. at 36). As of present, Defendants have not reinstated Plaintiffs to participate in the program, even though their own policy states that violators of the program will be temporarily removed for one year.

## ARGUMENT

Plaintiffs now respond to the six arguments defendants raised in support of their motion to dismiss. Defendants claim that: (1) Plaintiffs falied to properly serve Defendants Snyder; (2) Plaintiffs failed to properly serve GEO; (3) Plaintiffs claims are barred by the Prison Litigation Reform Act's Prohibition on Claims for mental or emotional injury without a related physical injury; (4) The Defendants, as private actors, are not subject to the provisions of RFRA; (5) The defendants are not subject to the provisions of RLUIPA because they are not affiliated with a state or local government; (6) Plaintiffs are not third party beneficiaries of the Rivers Contract.

Plaintiffs now responds to each of defendants arguments.

## I. DEFENDANT SNYDER AND GEO WERE PROPERLY SERVED

Defendants argue that the claims against Defendant George Snyder and GEO must be dismissed because Plaintiffs failed to properly serve them with a copy of the Summons and Complaint. Defendants' argument has no merit because this court issued an order on November 18, 2009 directing the United States Marshal to make service to all defendants on behalf of Plaintiffs because of

-4-

their incarceration status, and Plaintiffs relied on the marshals to effectuate such service. (See DKT #8). (See Olsen v. Mapes, 333 F.3d 1199, 1204-05 (10th Cir. 2003)(finding that Plaintiffs were not culpable for failing to comply with rules or court orders when they relied on Marshal to complete service). In the event service is not proper, then plaintiffs ask the court to order marshals to effect proper service.

II. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE PRISON LITIGATION REFORM ACT'S PROHIBITION ON CLAIMS FOR MENTAL OR EMOTIONAL INJURY WITHOUT A RELATED PHYSICAL INJURY

As a direct and proximate result of the negligent actions of the defendants, Plaintiffs have both suffered and continue to suffer significant damages, including weight loss. At the risk of severe physical harm to their bodies and health, the Plaintiffs were forced, and continue to be forced to consume a non-permissible diet. This has resulted in continued suffering of mental and emotional distress upon Plaintiffs. Plaintiffs have been removed from their diet for more than one year now, and defendants have refused to reinstate them. (Compl. at 43 & 44).

Weight loss constitutes physical injury under PLRA. However, even if PLRA may bar recovery of compensatory damages for mental or emotional injuries, the PLRA does not bar recovery of nominal or punitive damages in this case, therefore Plaintiffs' claim on this issue should not be dismissed. In the case of Kamal K. Patel v Jose Santana, 2009 U.S. App. LEXIS 22819, the Fifth Circuit affirmed the lower court's dismissal of the compensatory damage claims against the two defendants, but reversed the dismissal of the claims for nominal and punitive damages against the two officials. The court stated that although section 1997e(e) bars Patel's claims for compensatory damages,

it does not bar his other requests for monetary relief, that is, punitive and nominal damages, citing Hutchins v. McDaniels, 512 F.3d 193 (5th Cir. 2007). See also, Dean v Corrections Corp. of America, 540 F.Supp.2d 691, at 695 (N.D. Miss. 2008)(the plaintiff has alleged and proved no more than **de minimis** injury. Therefore he is entitled to nominal damages only. Citing Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005).

III.   DEFENDANTS ARE SUBJECT TO THE PROVISIONS OF THE RFRA

Defendants claim that Plaintiffs' RFRA claim fails because the GEO Defendants do not fall within RFRA'S definition of "government," because GEO and its employees are not federal actors, and so they cannot qualify as a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States. Defendants arguments are without merit for the following reasons.

a)   Defendants are subject to RFRA by virtue of the Contract:   The contract signed by both GEO and the BOP explicitly states in the Statement of Work (SOW) under the section **Inmate Rights**, that: "the contractor (GEO) shall ensure religious services program standards as established by the Religious Freedom Restoration Act are maintained." (See **EXHIBIT A:** GEO/BOP contract, Section M, page 30 of the SOW). This explicit contractual term destroys defendant's argument that they are not subjected to the provisions of the RFRA. In effect the defendants claim that they are not subjected to the RFRA by repudiating the expressed contractual terms they agreed to, then they are in breach of the contract. If such is the case, then plaintiffs move this court for permission to add the BOP as an indespensible party to enforce the contract so that plaintiffs rights under RFRA can be protected.

b)   Defendants are subject to RFRA as an instrumentality of the BOP: The RFRA is not limited only to federal actors but to any party that receives

-6-

federal funds. Defendants are confusing claims under Bivens with those under the RFRA. The case of Dean v. Corrections Corp. of America, 540 F.Supp.2d 691 (N.D. Miss 2008), shows that a government cannot dispense with a prisoner's constitutional rights by contracting with third parties to carry out their function of operating prisons. In Dean the plaintiff claimed that defendants violated RLUIPA by failing to provide him with a diet comporting with the requirements of his religion. The court ruled that because the state of Hawaii contracted Corrections Corp. of America to hold its prisoners, and Hawaii receive federal financial assistance for corrections, Corrections Corp. of America are "simply an instrumentality of the Hawaii Department of Public safety. Hence, under RLUIPA, the program or activity placing a burden on the plaintiff's (Dean) exercise of his religion is the Hawaii Department of Public Safety, which receives federal financial assistance."

The language of RFRA and RLUIPA are similar and interchangeable. The defendants in this instant case are even moreso an "instrumentality" of the government as opposed to the defendants in Dean, because GEO receives direct funding from the federal government to perform the function of holding BOP federal inmates, while the defendants in Dean received their funds indirectly from the federal government. It is firmly established that the BOP guarantees prisoners in its custody their religious rights under the RFRA, so logically then, it would be unlawful for the BOP to simply dispense of plaintiffs RFRA rights by entering into a contract with defendants, knowing that defendants will not protect those rights becuase they are not subject to the RFRA.

Defendants cite the case of Hall v. American National Red Cross, 86 F.3d 919 (9th Cir. 1996) to show that as a private corporation they do not fall under the RFRA's definition of an "instrumentality" of the United States.

-7-

Hall is limited to its own unique facts. A close reading of this case shows that defendants would more likely to be considered as instrumentality of the federal government because they have a sufficient functional nexus to the government. Defendants can be considered a government actor under a functional analysis. A "functional" analysis, or "federal action" test, examines whether the organizations's activity constitutes federal action considering (1) the nexus between the government and the challenged action, (2) whether the alleged government actor performed functions traditionally reserved to the government, and (3) whether the government coerced or encouraged the challenged action. American Bankers Mortgage, 75 F.3d at 1409 (citing San Francisco Arts & Athletics, Inc. v. United States Olympic Committee, 483 U.S. 522, 543-546 (1987).

In this case, Plaintiffs have shown that defendants, as a prison operator under contract with the Bureau of prisons is performing a function traditionally reserved for the government. The contractual relationship between the BOP and defendants, especially where defendants agree in the contract to "ensure that the religious services program standards are as established by the RFRA are maintained, explicitly shows that defendants are government actors under the First amendment and they are subject to the RFRA.

c) <u>Defendants are subject to the RFRA by virtue of the Permanent Injunction in Gartrell v Ashcroft</u>: The Rivers private prison is one of the prisons the BOP uses to house inmates from the District of Columbia, pursuant to the Revitalization Act passed by Congress in 1997. Not only does the BOP designate D.C. inmates to Rivers, they also designate criminal aliens to Rivers. As per a permanent injunction issued by Judge Kennedy in Gartrell v Ashcroft, 191 F.Supp.2d 23, at page 40 (D.D.C. 2002), before the BOP transfers one of their prisoners to a non-BOP facility, their designation

-8-

manual requires that the BOP officials assess each inmates religious beliefs and practices and take those beliefs into account in deciding whether that inmate should be placed in a non-BOP facility. In Gartrell, the BOP transferred D.C. inmates to the VDOC prison and the prison violated their rights under the RFRA. The BOP claimed that it couldn't control VDOC policy which did not abide by the RFRA. The court rejected this argument and ordered the BOP to re-take custody of those inmates whose RFRA rights were violated and place them in BOP institutions. The court then entered a judgement in favor of the plaintiffs and permanently enjoined the BOP from violating the plaintiffs rights under RFRA.

Hence, if the injunction protects the RFRA rights of BOP prisoners in all non-BOP operated contract facilities, then similarly situated BOP inmates housed at defendants' GEO Rivers prison cannot be treated differently. On this account, plaintiffs in this case must receive the same protection of their RFRA rights under the Gartrell injunction.

On the other hand, if defendants GEO is correct in this case, that is, they are not bound by the RFRA, this would place the BOP in direct violation of the Gartrell injunction. However, the most likely situation here is, that GEO is simply mistating its true obligations. Either way, RFRA and Gartrell requires compliance with RFRA. If not, this court should issue an order to direct the BOP officials to transfer plaintiffs back to a BOP operated institution to ensure that their RFRA rights are protected.

### IV. DEFENDANTS ARE SUBJECT TO THE PROVISIONS OF RLUIPA

Defendants claim that RLUIPA does not apply to them because they are not a state or local government. Plaintiffs however cite the case of Dean v. Corrections Corp. of America, 540 F.Supp.2d 691 (N.D. Miss 2008), to show that defendants are indeed subject to RLUIPA. The plaintiff in the Dean case

claimed that the defendants CCA failed to provide him with a diet comporting with the requirements of his religion. A claim that is similar to the one raised in this instant case. The court ruled that the defendants CCA in the Dean case are subject to RLUIPA. The court reasoned that, first, the defendants (as instrumentalities of the state of Hawaii) shall not impose a substantial burden on the religious exercise of the plaintiff - even if the burden results from a rule of general applicability - unless the defendants prove that the imposition of the burden on the plaintiff is (1) in furtherance of a compelling governmental interest; and (2) that imposition of the burden is the least restrictive means of furthering the compelling government interest.

Second, the court concluded that the federal government provided aid to the state of Hawaii's Department of Public Safety, which is responsible for administering corrections in Hawaii. As such the Hawaii Department of public safety is a subdivision of Hawaii's state government that receives and distributes federal assistance for corrections - and thus falls under the definition of "program" or "activity." In addition the state of Hawaii, through its department of Public Safety, entered into a contract with Corrections Corporation of America to take custody of various Hawaii inmates for the state. As such, for the purposes of RLUIPA, Corrections Corporation of America and the Tallahatchie County Correctional Facility are simply an instrumentality of the Department of Public Safety. The court noted that the drafters of RLUIPA included a provision requiring broad interpretation of the statute to provide the most protection for religious exercise. 42 USC 2000cc-3(g). Under this broad interpretation, the court finds that a state government accepting federal funds for prisons may not dispense with the requirements of RLUIPA simply by contracting with third parties to carry out

the state function of operating prisons.

Defendants GEO in this case receives direct federal funds to operate their prison to hold federal prisoners, and this makes them an instrumentality of the federal government and are subject to RLUIPA. If the court should adopt defendants arguments that they are not subject to RFRA and RLUIPA, then Plaintiffs are left without any protection from any violation of their first amendment rights to free exercise of their religion.

## V. PLAINTIFFS ARE THIRD PARTY BENEFICIARIES:

The BOP entered a contract with GEO defendants to protect plaintiffs' Religious freedom rights under the RFRA. If defendants are correct that they are not subjected to RFRA and RLUIPA, then the plaintiffs can seek to enforce the contract as a third party beneficiary. Moreover, if the BOP has contracted away plaintiffs RFRA and RLUIPA rights, then plaintiffs ask this court to add the BOP as a defendant or send this case the District of Columbia to ensure enforcement the injunction in <u>Gartrell</u> to protect their constitutional rights.

## CONCLUSION

WHEREFORE, based on the foregoing arguments and law, Plaintiffs request that this court deny Defendants motion to dismiss.

DATED: 2/18/2010

By: _Lascelles Somie_
Lascelles Somie
Reg. No: 39637-083
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

By: _Oral Malcolm_
Oral Malcolm
Reg.No: 39711-083
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

-11-

## CERTIFICATE OF SERVICE

This is to certify that I have mailed a copy of the foregoing PLAINTIFFS' REPLY BRIEF IN OPPOSITION TO GEO DEFENDANTS' MOTION TO DISMISS, to opposing counsel Robert T. Numbers, II, at Womble Carlyle Sandridge & rice, One West Fourth Street, Winston-Salem, NC 27101, by placing copy of the said brief in a postage paid envelope and depositing it and its contents in the prison legal mailbox on this 18th day of February 2010.

By: _____
Lascelles Somie
Reg.No: 39637-083
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

**E X H I B I T - A**

# CONTRACT AWARD

| PAGE | OF | PAGES |
|---|---|---|
| 1 | | 181 |

| 1. CONTRACT NUMBER | 2. EFFECTIVE DATE | 3. SOLICITATION NUMBER | 4. REQUISITION/PROJECT NUMBER |
|---|---|---|---|
| ⌐-005 | See Block 15c | RFP PCC-0004 | N/A |

| 5. ISSUED BY | CODE N/A | 6. ADMINISTERED BY (If other than Item 5) | CODE N/A |
|---|---|---|---|
| Federal Bureau of Prisons<br>320 First Street NW Room 500-6<br>Washington, DC 20534<br>Scott P. Stermer, Contracting Officer<br>(OMB #1103-0018 EXP 02/28/01) | | Same Block 5 | **ORIGINAL** |

| 7. NAME AND ADDRESS OF CONTRACTOR | CODE | 8. PAYMENT WILL BE MADE BY |
|---|---|---|
| Wackenhut Corrections Corporation<br>4200 Wackenhut Drive<br>Palm Beach Gardens, FL 33410 | | Federal Bureau of Prisons<br>Mid-Atlantic Region<br>Junction Business Park<br>10010 Junction Drive, Suite 100-N<br>Annapolis Junction, MD 20701<br>Regional Comptroller |

| 9A. DUNS NUMBER | 9B. TAXPAYER'S IDENTIFICATION NO. | 10. SUBMIT INVOICES (4 copies unless otherwise specified) TO |
|---|---|---|
| | (b)(4) | [X] ITEM 5  [ ] ITEM 6  [ ] ITEM 8  [ ] OTHER (Specify) |

## 11. TABLE OF CONTENTS

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| X | A | SOLICITATION/CONTRACT FORM | 3 | X | I | CONTRACT CLAUSES | 11 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 4 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH.** | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 40 | X | J | LIST OF ATTACHMENTS | 96 |
| X | D | PACKAGING AND MARKING | 1 | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| X | E | INSPECTION AND ACCEPTANCE | 4 | X | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | 14 |
| X | F | DELIVERIES OR PERFORMANCE | 2 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | G | CONTRACT ADMINISTRATION DATA | 3 | | M | EVALUATION FACTORS FOR AWARD | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 3 | | | | |

**12. BRIEF DESCRIPTION**

Contractor-Owned and Contractor-Operated correctional facility for an estimated population of 1,200 low security male District of Columbia (D.C.) sentenced felons.

| 13. TOTAL AMOUNT OF CONTRACT ▶ | $91,890,622.95 (FP0100BT120M) |
|---|---|

**14. CONTRACTOR'S AGREEMENT.** Contractor agrees to furnish and deliver the items or perform services to the extent stated in this document for the consideration stated. The rights and obligations of the parties to this contract shall be subject to and governed by this document and any documents attached or incorporated by reference.

**15. AWARD.** The Government hereby accepts your offer on the solicitation identified in Item 3 above as reflected in this award document. The rights and obligations of the parties to this contract shall be subject to and governed by this document and any documents attached or incorporated by reference.

[X] A. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN FOUR COPIES TO THE ISSUING OFFICE. (Check if applicable)

| B. SIGNATURE OF PERSON AUTHORIZED TO SIGN | A. UNITED STATES OF AMERICA (Signature of Contracting Officer) |
|---|---|
| /s/ | /s/ |
| C. NAME OF SIGNER<br>Wayne H. Calabrese | B. NAME OF CONTRACTING OFFICER<br>Scott P. Stermer, Contracting Officer |
| D. TITLE OF SIGNER<br>President | |
| /22/2000 | C. DATE<br>3/7/2000 |

AUTHORIZED FOR LOCAL REPRODUCTION

OPTIONAL FORM 307 (9-97)
Prescribed by GSA - FAR (48 CFR) 53.215-1(c)

**EXHIBIT-A**

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

requests for assistance in the event of incidents that may have an adverse impact on the community.

The emergency plan shall include provisions for two or more disturbance control teams. Protective clothing and equipment for each team member and 30% of all additional institution staff, shall be provided by the contractor and maintained in a secure location outside the secure perimeter of the low security institution.

Any decision by the BOP or other Federal agencies to provide and/or direct emergency assistance at the institution will be at the discretion of the Federal agencies. The contractor shall reimburse the Federal agency(ies) for any and all expenses incurred as a result of providing such assistance.

The CO shall be notified immediately in the event of an escape. Attempts to apprehend the escapee(s) shall be in accordance with the Emergency Plan. The contractor shall follow notification practices and procedures as set forth in P.S. 5553.05, Escapes/Deaths Notification and WAN Form 583, Report of Incident, shall be submitted.

L. Discipline

The contractor shall comply with the policy and procedures for inmate discipline as contained in 28 CFR 541 and P.S. 5270.07, Discipline and Special Housing Units. The contractor's DHO and alternate shall be trained and certified by the BOP prior to acceptance of inmates. All data regarding the discipline incident report process shall be entered into SENTRY.

M. Inmate Rights

The contractor shall stock and provide inmates with BOP administrative remedy forms to accommodate any claims directly related to BOP matters (e.g. sentence computation; designation and transfer issues; prior custody).

The contractor shall ensure religious services program standards as established by the Religious Freedom Restoration Act are maintained.

30

EXHIBIT-A

Case 5:09-ct-03142-FL   Document 18   Filed 02/19/2010   Page 15 of 15