IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:09-CT-3142-FL

LASCELLES SOMIE and ORAL MALCOLM,

    Plaintiffs,

v.

THE GEO GROUP, INC., et al.,

    Defendants.

FILED
MAR 1 8 2010
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

==================================================================

### PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSE MEMORANDUM TO DEFENDANTS' SECOND MEMORANDUM IN SUPPORT OF GEO DEFENDANTS' MOTION TO DISMISS

COMES NOW, Plaintiffs Lascelles Somie and Oral Malcolm, pro-se, respectfully file this Second Supplemental Response Memorandum to GEO Defendants' Second Memorandum in support of their Motion to Dismiss.

### STATEMENT OF THE CASE

1. On August 17, 2009, Plaintiffs filed their Complaint.

2. On January 11, 2010, Defendants filed their First Motion and Memorandum in Support of GEO Defendants' Motion to Dismiss.

3. On or about February 18, 2010, Plaintiffs filed their Reply Brief in Opposition to GEO Defendants' Motion to Dismiss.

4. On March 8, 2010, Defendants filed a Second Memorandum in Support of their Motion to Dismiss.

5. Plaintiffs now file this instant Surreply, and state:

### ARGUMENT

Defendants submitted the following arguments to support their Second

Memorandum in Support of their Motion to Dismiss, by claiming that; (1) Plaintiffs failed to allege a physical injury resulting from their removal from the religious diet program; (2) The Rivers Contract does not provide Plaintiffs with a cause of action against GEO for alleged violations of RFRA; (3) The Fourth Circuit court of appeals has already determined that GEO and its employees are not government actors; (4) The injunction entered in <u>Gartrell v Ashcroft</u>, does not apply to GEO, and, (5) Defendants are not subject to RLUIPA because they do not receive Federal Financial Assistance.

In opposition to defendants' arguments, Plaintiffs state the following:

I. **THIS CASE SHOULD NOT BE DISMISSED EVEN IF PLAINTIFFS DID NOT ALLEGE PHYSICAL INJURY IN THEIR COMPLAINT**

First, Plaintiff will address defendants' assertion that plaintiffs alleged a physical injury, that is they, <u>have both suffered and continue to suffer ... weight loss</u>, to avoid dismissal of their claims under the PLRA. It is true that plaintiffs did not make such an allegation in their Complaint, but it should be quite obvious that from the date defendants denied plaintiffs their religious diet, (December 28, 2008), until the date they filed the complaint, (August 17, 2009), to the present date, they would indeed lose weight. As of the writing of this Memorandum, defendants have denied Plaintiffs over 1,305 meals. (The number of days from December 28, 2008 to the present date = 435 days since Plaintiffs were denied their religious meals, times, 3 meals per day = 1,305 meals). Since then, Plaintiffs have to pick and choose what they eat from the regular non-religious meals served on the mainline, to remain within the strictures of their 12 Tribe Rasta Religious Diet requirements, and just to stay alive.

Case 5:09-ct-03142-FL    Document 20    Filed 03/18/2010    Page 2 of 17

Under these circumstances, its not only emotionally and mentally distressing, but it is quite inevitable that Plaintiffs will lose weight, and weight loss is a form of physical injury that would satisfy the requirements of the PLRA.

However, as plaintiffs stated in their First Reply Brief, even absent a showing of physical injury, the entire action cannot be dismissed for the following reasons. Plaintiffs cite several cases from different circuits to show that although section 1997e(e) of the PLRA bars claims for compensatory damages, it does not bar civil actions for nominal and punitive monetary relief, nor does it bar requests for declaratory or injunctive relief. Defendants argument that the PLRA bars Plaintiffs' Complaint in its entirety is severely flawed in light of these cases. If defendants were correct in their reasoning, then the PLRA would be unconstitutional because it would leave prisoners without any avenue to vindicate their rights or seek redress from the courts when defendants violate their constitutional rights.

In their First Reply Brief, Planitiffs cite the case of Hutchins v. McDaniels, 512 F.3d 193 (5th Cir 2007). In that case, the Fifth Circuit court of Appeals held that, **inmate did not have to allege any physical injury in order to state claim for recovery of nominal or punitive damages.** The court stated that they have recognized that non-prisoners may recover punitive and nominal damages when their Fourth Amendment rights are violated even if they are unable to show physical injury. Williams v. Kaufman County, 352 F.3d 994, 1014-15 (5th Cir. 2003). The court also noted that section 1997e(e) turns on the relief sought, Geiger v Jowers, 404 F.3d at 371 at 375 (5th Cir. 2005), and that physical injury requirement does not bar declaratory or injunctive relief for violations of

-3-

a prisoner's constitutional rights. See, Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999).

In several unpublished opinions the court stated that it relied on Williams to hold that 1997e(e) does not bar a prisoner's ability to recover nominal damages for a Constitutional violation., and cited, Alex v. Stalder, 225 Fed.Appx 313, 314 (5th Cir. 2007)(stating that a prisoner, although not entitled to compensatory damages under section 1997e(e) might still be able to recover nominal damages); Whitman v. Washington, 113 Fed.Appx. 605, 606 (5th Cir. 2004)(noting that, although prisoner could not recover actual damages, he might still be able to recover nominal damages for an Eight Amendment claim); Herron v Patrolman #1, 111 Fed.Appx. 710, 713 (5th Cir. 2004)(noting that the physical injury requirement **does not necessarily preclude recovery of ... nominal damages for constitutional injuries**).

Defendants cite the Eleventh Circuit case of Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000), to show that Plaintiffs claim should be dismissed in its entirety for failing to show physical injury. Although this case does discuss the PLRA's plain language, legislative history, and the scope of section 1997e(e), it does not address the core issue as to whether the PLRA bar prisoners from seeking nominal and punitive damages absent a showing of physical injury. In opposition, Plaintiffs cite Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003). This case was decided by the Eleventh Circuit three years after their decision in the Harris case. The court concluded that nominal damages are appropriate if a Plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages. (Citing, Carey v. Piphus, 435 U.S. 247, 255, 98 S.Ct. 1042, 55

-4-

L.Ed.2d 252 (1978)). The Eleventh circuit stated that relying on the plain text of the statute, the second, Third, Seventh and Ninth and Tenth Circuits have interpreted section 1997e(e) **not to** preclude a prisoner from seeking nominal damages. See, Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir. 2003)(nominal damages are awarded to vindicate rights, not to compensate for resulting injuries...1997e(e) does not bar a suit seeking nominal damages to vindicate Eight Amendment rights); Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002)(even absent physical injury, prisoner was entitled to seek nominal and punitive damages under section 1997e(e)); Thompson v Carter, 284 F.3d 411, 418 (2nd Cir. 2002); Searles v. Van Bebber, 251 F.3d 869, 878-79 (10th Cir. 2001)(PLRA restrictions on prisoner's ability to recover for mental and emotional injuries in civil actions does not prohibit recovery of punitive and nominal damages for violations of prisoner's constitutional rights, and as a general rule, punitive damages may be recoverable for constitutional violations without a showing of compensable injury); Allah v. Al-Hafeez, 226 F.3d 247, 252 (3rd Cir. 2000)(barring compensatory damages, but claims for nominal damages not barred by provisions of the PLRA, and, to the extent that Allah's claims for punitive damages are premised on the alleged violation of his right to free exercise of his religion...those claims are not barred).

In sum, Plaintiffs assert that they have satisfied the requirements of the PLRA and they are entitled to compensatory, punitive and/or nominal damages, as well as, declaratory and injunctive relief as pleaded in their complaint.

## II. RIVERS CONTRACT DOES PROVIDE PLAINTIFFS WITH A CAUSE OF ACTION AGAINST GEO FOR VIOLATIONS OF RFRA

In Plaintiffs' First Reply brief, they pointed out that defendants are subject to the RFRA by virtue of the Contract, because they explicitly agreed to abide the terms as written in the Statement of Work under the section entitled, **Inmate Rights**. To reiterate, that specific part of the contract states...**the contractor (GEO) shall ensure religious services program standards as established by the Religious Freedom Restoration Act (RFRA) are maintained.** Defendants remain silent on this point in their latest reply memorandum.

At first, they raised the defense that they are not subject to the provisions of the RFRA, but it now appears that they have encountered a dilemma, because, how can defendants **agree to maintain** and **ensure** that religious services programs under the RFRA are met, if they claim not to be subject to the RFRA? And if they agreed that they shall ensure and maintain the religious services program under the RFRA, would they not be in breach of the contract if they blatantly chose not to hold up to their end of the agreement by claiming they are not subject to the RFRA? If the defendants are correct, did the BOP contract away the important first amendment rights of Plaintiffs as protected under the RFRA? Where will Plaintiffs find protection and enforcement of their rights if neither GEO nor the BOP can be held liable for violations under the RFRA?

In defense of the Breach of Contract claim, defendants cite the case of Mathis v. GEO Group, 2:08-ct-00021-D (E.D.N.C. Nov. 9, 2009), to support their argument that Plaintiffs do not have a right to enforce the terms of the Rivers Contract and asked the court to dismiss plaintiffs' claims. In the Mathis case, District Judge Devers held that plaintiffs in that case

-6-

are not third party beneficiaries. It is important to note that judge Devers' decision on this issue within this district and this circuit, does not bind all similarly situated district judges. District court decisions do not have precedential authority. A district court sitting in North Carolina is not bound by the decisions of any courts other than the Fourth Circuit Court of Appeals and the United States Supreme Court; decisions of other federal courts or other judges are not controlling. See, John S. Clark Co., Inc. v United Nat'l. Ins. Co., 304 F.Supp.2d 758 (M.D.N.C. 2004). See also, Anderson v Romero, 72 F.3d 519 (7th Cir. 1995)(District court decisions have no weight as precedents, no authority); (Hart v Massanari, 266 F.3d 1155 (9th Cir. 2001).

In recognition that inmates have a constitutional right to freely practice their religion in prison, the BOP entered into a contract with GEO to ensure that religious services program standards as established by the RFRA are maintained. This provision in the contract makes it crystal clear that Plaintiffs are the direct beneficiaries of the RFRA rights conferred to inmates in the Statement of Work.

It is well settled North Carolina recognizes the right of a third party beneficiary to sue for breach of a contract executed for his benefit. See, Vogel v Reed Supply Co., 277 N.C. 119, 117 S.E.2d 273 (1970). Plaintiffs must demonstrate: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for Plaintiffs direct, and not incidental, benefit. See, Washington Square Securities, Inc. v. Aune, 253 F.Supp.2d 839 (W.D.N.C. 2003).

Plaintiffs have demonstrated by the allegations made in their complaint, that they are Third Party Beneficiaries to the GEO/BOP Contract.

-7-

See also, Blis Day Spa, LLC v. Hartford Ins. Group, 427 F.Supp.2d 621 (W.D.N.C. 2006)(The most significant factor as to the rights of a third-party beneficiary is that **both** contracting parties intend that a third-party should receive a benefit that might be enforced in the courts. It is not enough that only one of the parties to the contract and the third party intended that the third party should be a beneficiary. Raritan River Steel Co. v. Cherry, Bekaert & Holland, 329 N.C. 646, 651, 407 S.E.2d 178, 181 (1991)(citing Vogel v Reed Supply Co., 277 N.C. 119, 117 S.E.2d 273 (1970). Without a doubt, both the BOP and GEO intended that Plaintiffs would be direct beneficiaries of the contract in order to protect their rights under the RFRA, and the RFRA guarantees that any violation of such rights can be enforced in the courts.

In Owens v Haas, 601 F.2d 1242 (2nd Cir. 1979), the federal government had a contract with a county jail to hold a federal prisoner. The jail officers allegedly injured the prisoner and he sought relief under the contract. The court held that the federal prisoner was intended to benefit from the contract between the parties, because, among other things, **the policy statement of the Bureau of Prisons, incorporated into the contract, includes numerous clauses which provide for the safekeeping of federal prisoners.** Id at 1250. The court found that the provisions of the BOP Policy Statement suggest that a federal prisoner who was injured in a county jail, could claim status as an intended beneficiary if the contract. Id.

Similarly then, because the BOP Program Statement (PS 5360.09: Religious Beliefs and Practices), affords federal prisoners the right to freely practice their religion and does not deter inmates to ask the courts to enforce those rights, suggest that the injured Plaintiffs in this case

-8-

can claim the status as direct beneficiary of the contract and to seek redress from this court. If the the contract was not written for the direct benefit of Plaintiffs and other similarly situated federal prisoners, then for whom was the contract written and executed? Also, if according to Judge Devers' holding in Mathis, that the contract disclaims the BOP's liability to third parties and making the government contracting officer the only party that may taker formal action against GEO for unsatisfactory performance, then the question is, ||Who will enforce the contract when it is breached if the BOP fails to enforce the contract? If the BOP cannot be held liable for the actions of GEO, and GEO is not subject to the RFRA, then how, and who, will protect the rights of Plaintiffs when such rights are violated? Is it constitutional for Plaintiffs to be left without an avenue to seek redress from the courts when their RFRA rights are violated, especially when those who are their custodians absolve themselves of any liabilities?

For the foregoing reasons, Plaintiffs assert that they have stated a third party beneficiary cause of action against GEO defendants.

III. **PLAINTIFFS HAVE A CAUSE OF ACTION UNDER HOLLY v SCOTT AND MALESCO IF NO ALTERNATIVE REMEDIES EXIST TO ADDRESS VIOLATIONS OF THEIR RIGHTS UNDER THE RFRA**

Defendants argue that plaintiffs are attempting to shoehorn them into the scope of RFRA by claiming that defendants can be considered a government actor because they are performing a function traditionally reserved for the government, and they cite the Fourth Circuit case of Holly v Scott, 434 F.3d 287 (4th Cir. 2006) to support their position in seeking dismissal of plaintiffs RFRA claims.

However, a close reading of the Holly case shows that the Fourth

-9-

Circuit and the Supreme Court did not foreclose all remedies even if defendants are not government actors. The court stated that ... **even if there did exist circumstances where a private party could be subject to liability under Bivens, this case does not present them.** Plaintiffs submit that the facts and circumstances in their case is different from those in Holly, and liability under Bivens can be extended to defendants.

The Fourth Circuit refrained from extending Bivens liability to the individual employees of GEO, a private corporation, because Holly possesed **alternative - and arguably superior - causes of action against defendants under the state law of Negligence.** Plaintiffs assert they have no such state law remedies available to them.

Holly went on to teach that the Supreme Court has extended Bivens in only two circumstances, citing, Correctional Servs. Corp. v Malesco, 534 U.S. 61 at 70, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). One has been to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officers' unconstitutional conduct. Id. This was the rationale both for Bivens itself and in Davis v Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); where the plaintiffs' injuries would have gone entirely undressed without an implied constitutional remedy. See Id. at 74, 122 S.Ct. 515 (noting that each case involved a plaintiff in search of a remedy); Davis, 442 U.S. at 245, 99 S.Ct. 2264 (recognizing damages remedy where for Davis, as for Bivens, it is damages or nothing)(internal quotation marks ommitted); Bivens, 403 U.S. at 394, 91 S.Ct. 1999 (recognizing damages remedy where state law may be inconsistent or even hostile to interests protected by the fourth amendment).

The other rationale for extension of Bivens has been **to provide an**

-10-

otherwise non-existent cause of action against individual officers alleged to have acted unconstitutionally. Malesco, 534 U.S. at 70, 122 S.Ct. 515. This was the rationale behind Carlson, where relief was available only against the government itself, and not against individual tortfeasors. See Id. at 74, 122 S.Ct. 515 (noting that in Carlson, <u>a cause of action against an individual officer was otherwise lacking</u>). Carlson, 466 U.S. at 21, 100 S.Ct. 1468 (discussing the fact that the plaintiff's Federal Tort Claims Act remedy did not allow for recovery against the individual officers responsible for violating his rights).

The Holly court went on to state that, where these two circumstances are not present, the Court has consistently rejected invitations to enlarge the scope of the judicially created Bivens remedy. Malesco, 534 U.S. at 70, 122 S.Ct. 515. Neither circumstance were present in the Holly case. The court stated that North Carolina law supplies Holly with multiple potential claims against the individual defendants.

<u>AVAILABLE REMEDIES:</u> If defendants are correct that they are not subject to the RFRA, RLUIPA, or liable under any of the other claims they presented, and, if Plaintiffs are barred from filing a claim under the Federal Tort Claims Act and barred from seeking a remedy through the Bureau of Prisons Administrative Remedy Procedures, then Plaintiffs are left with no alternative remedies to address the harms caused by defendants' unconstitutional conduct.

<u>NO REMEDY FROM THE BOP:</u> According to the GEO/Rivers Correctional Institution's Administrative Remedy Procedure, Policy Number: 12.006, Section (L): Appeal Procedures to the BOP), grievances for inmates housed at RCI or events which occured while at RCI may be appealed to the BOP only if they are under (1) of the following categories: (1) DHO Sanction; (2)

-11-

Designation; (3) Transfer Issues; (4) Issues directly involving BOP Staff, or which arose at a BOP facility. (See EXHIBIT - A: RCI ADMINISTRATIVE REMEDY PROCEDURE).

Hence, violations of plaintiffs' religious rights under the RFRA by GEO defendants cannot be appealed to the BOP once Plaintiffs exhaust all administrative remedies at RCI. In essennce, the BOP has dispensed with plaintiffs' constitutional rights under the GEO contract. BOP assumes no liabilities for defendants' violation of Plaintiffs religious rights. (See, Malesco, 534 U.S. at 74, 122 S.Ct. 515 (Malesco had access to BOP Administrative Remedy as an alternative remedy).

NO REMEDY UNDER THE FEDERAL TORT CLAIM ACT: On October 1, 2009, Plaintiffs filed a claim under the Federal Tort Claims Act (FTCA), Title 28 USC 2672, claiming violation of their constitutional rights and seeking compensation in the amount of $493,000.00 The U.S. Department of Justice denied the relief sought by plaintiffs' by stating that...**such claims are not cognizable under the FTCA, and furthermore, there is no evidence that any act or ommission of a Bureau of Prisons staff member contributed to any compensable injury (Plaintiffs) may have sustained.** (See EXHIBIT B: Plaintiffs Tort Claims). Hence, the FTCA provides no remedy for Plaintiffs. (See, Carlson, 446 U.S. at 21, 100 S.Ct. 1468 (discussing the fact that the plaintiff's Federal Tort Claim Act Remedy did not allow for recovery against the individual officers responsible for violating his rights).

STATE LAW REMEDIES: As in Holly where he could have used multiple state law claims to address his medical malpractice and negligence issues, Plaintiffs are unaware of any such remedies available to them under North Carolina law to address the violation of their federally protected rights

-12-

under the RFRA. Moreover, plaintiffs sees no reason why state law should be used to correct violations under the RFRA when the Act itself provides its own judicial remedies. (See, Hall v American Nat. Red Cross, 86 F.3d 919, at 920 (9th Cir. 1996)(A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government...42 U.S.C. 2000bb-1(c)).

Considering that there may be no alternative remedies available, then this court should apply Holly and Malesco and extend Bivens to allow for recovery against defendants who are responsible for violating Plaintiff' rights.

IV. THE INJUNCTION IN GARTRELL v ASHCROFT APPLIES TO GEO

GEO/Rivers prison operation owes its current existence to a procurement contract with the BOP following the passage of the National Capital Revitalization Act of 1997, in which Congress mandated the BOP to house at least 50% of D.C. inmates in private contract facilities. Plaintiffs are quite sure that when Congress passed this law, they did not intend that inmates housed at Rivers would lose protection of their constitutional rights under the RFRA.

The court in Gartrell v Ashcroft, 191 F.Supp.2d 23 (D.D.C. 2002), declared that the BOP is bound by the RFRA in discharging its obligations under the 1997 Revitalization Act. (See 42 U.S.C. 2000bb-3(b)(federal statutory law adopted after November 16, 1993 is subject to RFRA unless such law explicitly excludes such application by reference to RFRA).

Simply put, if the BOP is bound by the RFRA under the Revitalization Act in relation to the D.C. inmates they house in the Virginia Department

-13-

Case 5:09-ct-03142-FL   Document 20   Filed 03/18/2010   Page 13 of 17

of Corrections prisons, then the BOP, under the Gartrell injunction cannot dispense of those rights for similarly situated prisoners who are housed at the Rivers prison operated by defendants. If such is the case, then Plaintiffs ask this court to add the BOP as a defendant, and issue a similar injunction like that in Gartrell, enjoing them from violating the RFRA and transferring them to a BOP operated prison where their RFRA rights can be protected and enforced when violated.

## V. DEFENDANTS ARE SUBJECT TO RLUIPA AND RFRA FOR RECEIVING FEDERAL FINANCIAL ASSISTANCE

To support their claim, Plaintiffs cite Dean v Corrections Corporation of America, 540 F.Supp.2d 691 (N.D. Miss 2008).

Defendants argue that plaintiffs reliance on Dean is misplaced for two reasons; (1) The facility at issue in Dean is a state facility, and, (2) although GEO receive funds from the federal government, it does not receive **federal financial assistance** as that term is defined under federal law.

First, defendants contention that the facility in Dean is a state facility is wrong. Defendants should have been to able to realize from the case header that the defendants in Dean were not a state facility as they claim, but a private corporation, which in fact, is their arch rival in the private prison business. The facility in Dean is operated under a contract between the state of Hawaii Department of Public Safety and the Corrections Corporation of America. This is the same type of contractual arrangement under which defendants Rivers private prison operates, except for the fact that it is the federal government and not the state of North Carolina who is the other contracting party.

If defendants are agreeing that by virtue of the agreement with the

-14-

state of Hawaii the CCA operated facility in Dean is a state facility and are subject to RLUIPA, then the same rationale can be applied to defendants themselves who are contracting parties with the BOP, and the Rivers prison can be considered a federal facility and subject to the RFRA without any further argument.

In addressing defendants' second argument, Plaintiffs can see no distinction between the terms, receive funds from the federal government, and, receive federal financial assistance. Isn't federal financial assistance made up of funds from the federal government? Furthermore, defendants claim that the term federal financial assistance is defined under **federal law,** but they failed to identify which federal law. Defendants once again cite the case of Mathis v GEO Group, 2:08-ct-00021-D (E.D.N.C. 2009), in which Judge Devers conducted an exhaustive analysis of the term federal financial assistance. However, the term was defined in the Mathis case under the Rehabilitaion Act, and not under the Acts of RLUIPA or RFRA. Furthermore, as plaintiffs explained earlier, the opinions expressed in Mathis by one single district judge has no precedential value, and does not bind this or any other judge in this district to go along with that opinion.

The principles of RLUIPA and RFRA are interchangeable, and the Dean case provides guidance as to how a court must distill the stautory mandate of these Acts into rules and apply those rules to the case at hand. The court made specific reference to a section of the Act where the drafters of RLUIPA included a provision requiring broad interpretation of the statute to provide the most protection for religious exercise: "This chapter shall be **construed in favor of a broad protection of religious** exercise, to the

-15-

maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).

Under the broad interpretation, the court in <u>Dean</u> finds that a state government accepting federal funds for prisons may not dispense with the requirements of RLUIPA simply by contracting with third parties to carry out the state function of operating prisons. The same is true for GEO defendants in this case, who acknowledged to receiving federal funds directly from the federal government to carry out the federal government's function of operating federal prisons. Hence, GEO defendants should be subject to the RFRA and RLUIPA.

Second, the <u>Dean</u> court discarded of defendants argument that the drafters of RLUIPA did not intend for a private entity such as Corrections Corporation of America to be considered a "program or activity" because paragraph 3(A) of section 2000d-4a (which was intentionally excluded from the RLUIPA definition of "program or activity") specifically addresses private entities engaged in housing. The defendants argue that had Congress intended to include such private entities in the broad language of paragraph (1) ("other instrumentality of a State or local government"), then paragraph (3)(A) would be subsumed in paragraph (1) and thus have no purpose.

The court disagreed with defendants interpretation and stated that a holistic approach to statutory interpretation leads to the opposite conclusion. After explaining the sections of RLUIPA in question, the court held that the defendants in <u>Dean</u> are instrumentalities of the Hawaii Department of Public Safety and are considered to be a program or activity which receives federal financial assistance.

The same conclusion can be drawn for the GEO defendants in this

-16-

instant case, and this court can hold that defendants are subject to RFRA and RLUIPA for receiving direct federal funds which is also qualified as federal financial assistance and because in this sense, they are instrumentalities of the federal government.

## CONCLUSION

WHEREFORE, based on the foregoing arguments and cases cited, plaintiffs ask that this court dismiss defendants Motion to Dismiss.

DATED: 3-16-10

By: /s/ Lascelles Somie
Lascelles Somie
Reg.# 39637-083
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

By: /s/ Oral Malcolm
Oral Malcolm
Reg.#: 39711-083
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

## CERTIFICATE OF SERVICE

This is to certify that I have mailed a true and correct copy of the foregoing PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSE MEMORANDUM TO DEFENDANTS' SECOND MEMORANDUM IN SUPPORT OF GEO DEFENDANTS' MOTION TO DISMISS, to opposing counsel, Robert T. Numbers II, at Womble Carlyle Sandridge & Rice, One West Fourth Street, Winston-Salem, NC 27101, by placing said copy of the foregoing memorandum in a postage paid envelope and depositing it and its contents in the prison legal mailbox on this  16  day of March 2010.

By: /s/ Lascelles Somie
Lascelles Somie
Reg.#: 39637-083