IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:09-CT-3142-FL

| | |
|---|---|
| LASCELLES SOMIE and ORAL MALCOLM, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| THE GEO GROUP, INC., et al., | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT THE FEDERAL BUREAU OF PRISONS' MOTION TO DISMISS**

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT THE FEDERAL BUREAU OF PRISONS' MOTION TO DISMISS

Plaintiffs LASCELLES SOMIE and ORAL MALCOLM (collectively "Plaintiffs") hereby provide their Memorandum in Opposition to the Motion to Dismiss filed by Defendant the United States of America, through its department, the Federal Bureau of Prisons ("BOP"), and to the arguments in support of said Motion raised in the accompanying Memorandum in Support of Motion to Dismiss (hereinafter, the "BOP Memorandum").

## INTRODUCTION

BOP, like its co-Defendant The GEO Group, Inc. ("GEO"), seeks to play a "finger-pointing" game in which each Defendant seeks to exploit contrived legal theories to avoid accountability for Plaintiffs' injury by telling the Court that Plaintiffs' recourse lies exclusively with the other Defendant. What the Defendants' mutual effort to avoid accountability fails to acknowledge, however, is that it is only through the two Defendants' working in close concert that Plaintiffs have sustained the injury they seek to redress in this litigation. Plaintiffs could not have sustained their injury without the combined actions – or inaction – of both Defendants.

Thus, rather than *neither* Defendant being liable – the manifestly unjust end result sought by the Defendants through their two-pronged attack on the First Amended Complaint – the allegations in the First Amended Complaint establish that *both* Defendants are *independently* liable for Plaintiffs' injury. If Defendants' arguments are followed to their illogical conclusion, all inmates housed in private prison facilities would be relegated to a legal and constitutional "limbo," where neither the Government nor the prison operator is responsible for deprivations of their rights.

As set forth in this Memorandum, Plaintiffs have alleged sufficient facts to support the inference that BOP is aware of GEO's policy of conditioning prisoners' ability to receive religious diets on mandatory attendance at weekly religious services, and (1) has either actively approved GEO's unlawful policy or (2) has consciously chosen not to intervene to rectify GEO's unlawful policy. The First Amended Complaint therefore both (1) establishes Plaintiffs' Article III standing against BOP, and (2) states a claim against BOP upon which relief can be granted. Accordingly, BOP's Motion to Dismiss should be denied.

## STATEMENT OF THE CASE

Plaintiffs, federal inmates incarcerated at Rivers Correctional Institution ("Rivers"), a prison facility owned by GEO, initiated the instant action on August 17, 2009 by filing a *pro se* Complaint in the United States District Court for the Eastern District of North Carolina. Plaintiffs subsequently retained counsel and filed a motion on August 4, 2010 seeking leave to file an amended complaint, which motion the Court granted on September 20, 2010.

On October 6, 2010, Plaintiffs filed their First Amended Complaint. The First Amended Complaint names both GEO and BOP as defendants. Plaintiffs' First Amended Complaint is based on the Defendants' refusal to provide Plaintiffs with a religious diet which complies with the dietary laws of the Twelve Tribes of Israel ("Twelve Tribes") branch of the Rastafarian

2

WASH_7729845.3

Case 5:09-ct-03142-FL   Document 61   Filed 03/15/11   Page 2 of 19

religion, of which Plaintiffs have been sincere adherents their entire lives. The First Amended Complaint asserts two claims against GEO and BOP. The first claim is a cause of action under the Religious Freedom Restoration Act ("RFRA"). The second claim is a cause of action for violation of the Plaintiffs' free exercise of their religion under the First Amendment to the United States Constitution.

On February 4, 2011, BOP filed a Motion to Dismiss, asking this Court to dismiss Plaintiffs' First Amended Complaint as to BOP for lack of jurisdiction and failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On February 23, 2011, this Court granted Plaintiffs' motion for an extension of time in which to respond to BOP's Motion to Dismiss until March 15, 2011. This Memorandum in Opposition is timely filed in accordance with the extension granted by the Court.

## STANDARD OF REVIEW

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal citations and alterations omitted).

The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(1), Plaintiffs bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain their claims. *See Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). However, "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. When a motion to dismiss under Fed. R. Civ. P. 12(b)(1) contends that a complaint fails to allege facts upon which subject matter jurisdiction can be based, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F. 2d 1213 (4th Cir. 1982).

## STATEMENT OF FACTS

The following facts are alleged in the First Amended Complaint and, therefore, are to be accepted as true in resolving BOP's Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss:

Plaintiffs are federal prisoners. First Am. Comp. ¶ 20. BOP is responsible for the assignment of federal prisoners to correctional facilities. First Am. Comp. ¶ 21. BOP assigned Plaintiffs to be incarcerated at Rivers and in doing so, empowered GEO to perform the

penological functions and provide the services required of BOP under the U.S. Constitution and federal law. First Am. Comp. ¶ 21.

GEO's obligations regarding provision of meals to federal inmates and the preservation of the federal inmates' ability to freely exercise their sincerely held religious beliefs were the subject of negotiation between GEO and BOP prior to BOP's award of a contract to GEO for the housing of federal prisoners at Rivers. First Am. Compl. ¶ 12. Individuals incarcerated at Rivers are wholly dependent on GEO and the BOP for their ability to exercise freely their sincerely held religious beliefs, including their access to diets consistent with their religious beliefs. First Am. Compl. ¶ 14.

By entering into the Rivers Contract, GEO, under BOP supervision and control, assumed contractual responsibility for ensuring the preservation of the religious rights afforded under RFRA and the U.S. Constitution to federal inmates incarcerated at Rivers, and voluntarily submitted to long-term regulation and oversight by BOP. First Am. Compl. ¶ 14. The Rivers Contract between GEO and the BOP specifically includes a government-imposed mandate that GEO must comply with "the U.S. Constitution; all applicable Federal, state and local laws and regulations, applicable Presidential Executive Orders (E.O.); all applicable case law, consent decrees, and Court Orders." First Am. Compl. ¶ 15. As part of the Rivers Contract, BOP has further mandated that GEO "ensure religious services program standards as established by the Religious Freedom Restoration Act are maintained." First Am. Compl. ¶ 16.

Under the Rivers Contract, BOP has the power to exercise control over GEO's personnel decisions, policies and procedures and is responsible for, and actually does, monitor and oversee GEO's compliance with its contract obligations, including the obligations to comply with RFRA. First Am. Compl. ¶¶ 16-17. GEO must submit in writing to BOP, and obtain BOP's approval of,

"all plans, policies and procedures" at Rivers. First Am. Compl. ¶ 18. Once a plan, policy or procedure is approved by BOP, GEO cannot modify that plan, policy or procedure without the written acknowledgement of the BOP contracting officer. First Am. Compl. ¶ 18. Thus, BOP has first-hand knowledge of the plans, policies and procedures by which GEO administers the religious diet program at Rivers and has approved those plans, policies and procedures. First Am. Compl. ¶ 18.

BOP employees are stationed at Rivers as on-site monitors of GEO's performance of its contractual duties, including the requirement to comply with RFRA, and are charged with "the technical direction of the performance of all work" performed under the Rivers Contract. First Am. Compl. ¶ 19. The BOP on-site monitors are afforded 2,500 square feet of office space at Rivers and ten parking spaces. First Am. Compl. ¶ 19. Moreover, a BOP on-site monitor participates in the prison officer "main line," a process in which prison staff stand together outside the dining hall at mealtime to make themselves available for informal discussions with inmates and to receive and address inmate complaints. First Am. Compl. ¶ 19. By walking the halls, having an on-site office, and participating in the "main line" at mealtime, BOP's on-site monitors have first-hand knowledge of the manner in which GEO administers the religious diet program at Rivers. First Am. Compl. ¶ 19.

## ARGUMENT

The BOP Memorandum asserts two legal bases for dismissal of Plaintiffs' claims against BOP, both of which are founded on a single, faulty premise. First, BOP alleges that the Plaintiffs lack Article III standing to pursue their claims against BOP, because they have not established the necessary causal connection between BOP and Plaintiffs' injury. BOP Memorandum at 6-9. Second, BOP alleges that the Plaintiffs have failed to state a claim against

BOP, because they "have not alleged that the BOP took any act to substantially burden that exercise of their religion." *Id.* at 10. Both of BOP's arguments are predicated on BOP's insistence that the First Amended Complaint does not allege any action by BOP itself that is responsible for Plaintiffs' injury. Contrary to BOP's self-serving characterization of Plaintiffs' allegations, the First Amended Complaint *does* allege facts sufficient to establish BOP's liability for the injuries Plaintiffs have suffered. BOP's arguments therefore provide no basis to dismiss Plaintiffs' claims against it, and Plaintiffs respectfully request that the Court deny BOP's motion to dismiss.

I. **PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO DEMONSTRATE A CAUSAL CONNECTION BETWEEN THEIR INJURY AND BOP'S ACTIONS AND THEREFORE HAVE STANDING TO MAINTAIN THE INSTANT ACTION AGAINST BOP.**

As the BOP Memorandum notes, there are three predicate requirements for a plaintiff to establish Article III standing to pursue a claim in federal court: (1) an "injury in fact" to a "legally protected interest" that is both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the conduct complained of that is "fairly traceable" to the defendant and "not the result of the independent action of some third party not before the court"; and (3) a non-speculative likelihood that the injury would be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); BOP Memorandum at 6. These three prongs of the Article III standing test can be characterized in short-hand as (1) the "injury prong"; (2) the "causation prong"; and (3) the "redress prong."

BOP does not dispute that the Plaintiffs allege sufficient facts in the First Amended Complaint to satisfy the injury prong and the redress prong of the *Lujan* standard. *See* BOP Memorandum at 6-7 (urging the Court to dismiss Plaintiffs' claims against BOP solely "because

7

WASH_7729845.3

Case 5:09-ct-03142-FL   Document 61   Filed 03/15/11   Page 7 of 19

plaintiffs failed to satisfy the causation prong of the Article III standing requirement"). Indeed, BOP expressly acknowledges that "plaintiffs have articulated a concrete injury they allegedly suffered (removal from the religious diet program)," yet contends that the Plaintiffs have not cited any specific action by BOP that has caused that injury. *Id.* at 6.

BOP's contention that the Plaintiffs have not satisfied the "causation" prong is incorrect and relies upon an overly constrained and self-serving reading of the First Amended Complaint. Such a cramped reading of the First Amended Complaint is the antithesis of the broad construction the Court is required to give Plaintiffs' allegations at this stage in the proceedings. In assessing challenges to a plaintiff's standing, a court is to assume the merits of a dispute will be resolved in the plaintiff's favor and, "at the pleading stage, 'presumes that general allegations embrace those specific facts that are necessary to support the claim.'" *Equity In Athletics, Inc. v. Dep't of Education*, --- F.3d ---, 2011 WL 790055, *4 (4th Cir. Mar. 8, 2011) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

Moreover, while BOP may contest that it actually knew or approved of GEO's unlawful practice of conditioning receipt of a religious diet on mandatory attendance at religious services, the allegations in the First Amended Complaint are sufficient to embrace those facts, and the Supreme Court has made clear that a plaintiff's standing to bring a case does not depend upon his ultimate success on the merits underlying the case. *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Covenant Media of South Carolina, LLC v. City of North Charleston*, 493 F.3d 421, 429 (4th Cir. 2007). Rather, "standing depends on whether the plaintiff is the proper party to bring the suit." *Id.* (internal quotation marks omitted) (citing *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005)). Indeed, if a plaintiff's standing depended upon his success on the

8

WASH_7729845.3

Case 5:09-ct-03142-FL Document 61 Filed 03/15/11 Page 8 of 19

merits, "then every unsuccessful plaintiff will have lacked standing in the first place." *White Tail Park*, 413 F.3d at 461.

The First Amended Complaint alleges sufficient facts to establish a causal connection between the actions of BOP and Plaintiffs' injury. First and most fundamentally, Plaintiffs are in BOP's custody and control, and BOP is the party that actually assigned them to Rivers. Thus, BOP has taken the action of placing (and warehousing) the Plaintiffs in a facility where their religious rights have been violated. The First Amended Complaint alleges (and the BOP Memorandum does not dispute) that, through the Rivers Contract, the BOP is extensively involved in the administration of the programs, policies, and procedures GEO uses to manage federal prisoners at Rivers. GEO's imposition of a requirement of mandatory attendance at weekly religious services as a prerequisite for participation in the religious diet program is a "policy" or "procedure" at Rivers. Therefore, the facts alleged in the First Amended Complaint support the inference that BOP reviewed and affirmatively acted to *approve* the very "policy" or "procedure" Plaintiffs single out as the cause of their injury.

The First Amended Complaint further alleges that BOP performs daily, extensive on-site monitoring and quality assurance of GEO's actions and programs and, in fact, is responsible for "the technical direction of the performance of all work" performed by GEO under the Rivers Contract. Indeed, Plaintiffs have alleged that BOP's on-site monitors have *first-hand knowledge* of the manner in which GEO administers the religious diet program at Rivers, which would encompass GEO's unlawful practice of conditioning participation in the religious diet program on mandatory attendance at weekly religious services. These facts support the additional inference that BOP was aware of GEO's general policy or procedure requiring attendance at religious services as a prerequisite for participation in the religious diet program and either (1)

affirmed or approved of GEO's unlawful policy/procedure, or (2) consciously elected not to act to rectify GEO's unlawful policy/procedure despite having the contractual authority (and Constitutional duty) to do so.

The above facts and inferences, which the Court must assume to be true at this stage in the proceeding, would render BOP *directly* liable for the injuries Plaintiffs have sustained. BOP's liability for Plaintiffs' injuries would arise from BOP's own *actions* in approving or authorizing GEO's unlawful policy/procedure, or BOP's own *failure to act* in the face of knowledge that inmates in its custody are having their free exercise of religion substantially burdened, not from some theory of vicarious liability for the actions of GEO. Thus, Plaintiffs do not depend on a theory of "derivative liability" to establish standing, as BOP incorrectly contends. *See* BOP Memorandum at 8-9.

Moreover, even BOP acknowledges that this Court has found standing to exist where inmates at Rivers can establish that BOP knew of GEO's improper actions and independently took action to deny the inmates relief. *See id.* at 8-9. Citing the Court's ruling in *Mathis v. GEO*, No. 2:08-CT-21-D, 2010 WL 3834141, *6 (Sept. 29, 2010), BOP notes that the Court found that BOP's denial of an inmate's appeal of GEO's denial of his administrative complaint was sufficient to confer standing on the plaintiff in that case: "The Court denied the BOP's motion to dismiss holding that the plaintiff had standing on the basis that BOP 'engaged in conduct independent of GEO which caused his injury' when it rejected his appeal." BOP Memorandum at 9. Plaintiffs would be able to make a similar showing in this litigation that BOP received, and *denied,* a complaint from one or more of the Plaintiffs regarding GEO's removal of them from the religious diet program at Rivers. The general allegations in the First Amended Complaint that BOP had knowledge of GEO's practices in administering the religious diet

program at Rivers are sufficiently broad to encompass such a specific factual allegation, particularly in light of the liberal pleading standards of *Iqbal* and the Fourth Circuit's recent admonition in *Equity In Athletics* that a court must, at the pleading stage, presume "that general allegations embrace those specific facts that are necessary to support the claim.'" 2011 WL 790055 at *4.[1]

Indeed, the procedural posture of this case provides an independent basis to conclude that BOP was aware of, and chose to take no action to redress, Plaintiffs' specific grievance that GEO was denying them a religious diet solely on the basis of their failure to attend weekly religious services. Plaintiffs filed their initial complaint on August 17, 2009, proceeding *pro se* against GEO and certain individual GEO employees. Plaintiffs did not ultimately join BOP as a Defendant to this action until October 6, 2010, well over a year after the filing of their initial complaint against GEO. BOP attached to its Memorandum an excerpt from the Statement of Work ("SOW") for the Rivers Contract, and has asked the Court to consider that excerpt of the Rivers Contract SOW in evaluating BOP's Motion to Dismiss. *See* BOP Memorandum at 3 n.1 and Ex. A to BOP Memorandum. A provision in the SOW expressly requires GEO to provide the BOP contracting officer with copies of all litigation filed against it related to the Rivers Contract, which would have included Plaintiffs' original August 17, 2009 complaint in this proceeding: "The [BOP contracting officer] shall be notified in writing by the contractor of all litigation pertaining to this contract *and provided copies of said litigation within five working*

---

[1] Even if the Court disagrees that the allegation that BOP knew of Plaintiffs' specific grievance against GEO regarding the religious diet program and affirmatively acted to deny them relief is fairly encompassed in the general allegations in the First Amended Complaint, the appropriate remedy would be to allow Plaintiffs the opportunity to amend their complaint to add such an allegation against BOP, an exercise that would render dismissal of BOP at this stage a meaningless exercise.

11

WASH_7729845.3

Case 5:09-ct-03142-FL Document 61 Filed 03/15/11 Page 11 of 19

*days of the filing.*" BOP Memorandum Ex. A at 5 (emphasis added). Thus, BOP received notice within five working days of August 17, 2009 that Plaintiffs were aggrieved by GEO's unlawful practice of mandating attendance at weekly religious services as a condition of their receipt of religious diets at Rivers. Yet despite having received in August 2009 a complete copy of Plaintiffs' original complaint and supporting exhibits, BOP took no corrective action regarding GEO's unlawful policy/procedure mandating attendance at weekly religious services as a condition of participation in the religious diet program at Rivers. BOP's refusal to take corrective action against GEO's unlawful policy/procedure, despite BOP's Constitutional and statutory duties and contractual authority to do so, ultimately forced Plaintiffs to implead BOP as a Defendant to this action some fourteen months later. Given that procedural background to this case, Plaintiffs can make precisely the showing found sufficient to confer standing in *Mathis* – *i.e.*, that BOP was given an opportunity to act independently of GEO on their grievance and denied them any relief.

An examination of the third prong of the *Lujan* standard, the "redress prong," further demonstrates the fallacy of BOP's challenge to Plaintiffs' Article III standing. Tellingly, the BOP Memorandum does not address the redress prong or contest that Plaintiffs' injury could be redressed by a favorable decision by this Court against BOP. BOP's silence on that point presumably reflects its recognition that the availability of redress from BOP is obvious. BOP is the party with the ultimate ability to exert control over both the Plaintiffs *and* Defendant GEO. A favorable decision of this Court against BOP could thus yield Plaintiffs relief through BOP reassigning them to a prison environment that would not unlawfully burden their free exercise of religion, or through BOP exerting its contractual authority over GEO to ensure that GEO abides by the requirements to safeguard inmates' religious rights. This litigation is manifestly *not* the

12

WASH_7729845.3

Case 5:09-ct-03142-FL   Document 61   Filed 03/15/11   Page 12 of 19

type of case in which the governmental defendant is powerless to provide the relief desired by the plaintiffs because effective relief would depend upon the "independent action of some third party not before the court" and beyond the governmental defendant's control. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-43 (1976); *Allen v. Wright*, 468 U.S. 737, 758 (1984). The entire thrust of the factual allegations in the First Amended Complaint is that GEO is not truly an "*independent*" actor vis-à-vis BOP, when it comes to the administration and execution of prison plans, policies and procedures under the Rivers Contract, including the religious diet program and compliance with RFRA.

Thus, the factual allegations in the First Amended Complaint, read broadly as they must at this preliminary stage in the proceedings, fairly encompass actions that are "fairly traceable" to BOP and therefore confer standing upon Plaintiffs to bring claims against BOP seeking redress of their injury. The actions at issue – BOP's approval of GEO's unlawful policy and/or conscious failure to act to remedy GEO's unlawful policy – are the actions of *BOP*, independent of the actions of GEO, actions for which Plaintiffs rightfully seek to hold BOP to account.

**II.   PLAINTIFFS HAVE STATED A CLAIM AGAINST BOP UPON WHICH RELIEF CAN BE GRANTED BY ALLEGING FACTS THAT WOULD ESTABLISH THAT BOP AFFIRMATIVELY APPROVED GEO'S UNLAWFUL POLICY/PROCEDURE OR CONSCIOUSLY ELECTED NOT TO ACT TO ELIMINATE OR CHANGE THE UNLAWFUL POLICY/PROCEDURE.**

The same allegations that confer Article III standing upon Plaintiffs with respect to BOP are also sufficient to state a claim against BOP upon which relief can be granted. Plaintiffs' allegations do not implicate solely GEO, as BOP incorrectly contends. *See* BOP Memorandum at 10 ("plaintiffs' two claims against the BOP both rely upon allegations that GEO – not the BOP – improperly excluded them from participating in the religious diet program at Rivers"). Rather, as explained above, the First Amended Complaint alleges facts sufficient to establish that BOP

13

either (1) affirmed or approved GEO's unlawful policy/procedure of conditioning an inmate's participation in the religious diet program on mandatory attendance at weekly religious services, or (2) in the face of knowledge of GEO's unlawful policy/procedure, consciously elected not to act to rectify it, despite having the contractual authority (and Constitutional and statutory duties) to do so.

BOP does not contend in its Memorandum that it could not be held liable for a violation of RFRA or the First Amendment if it reviewed and approved of GEO's policy/procedure of conditioning an inmate's eligibility for participation in the religious diet program on mandatory attendance at weekly religious services. Instead, BOP narrowly construes the allegations in the First Amended Complaint to imply, incorrectly, that Plaintiffs somehow "approve" of the manner in which BOP has overseen or administered GEO's conduct of the religious diet program at Rivers and find fault exclusively with GEO. *See* BOP Memorandum at 8 ("plaintiffs actually approve of the actions that the BOP has allegedly taken with regard to their right to exercise their religion"). No fair reading of the First Amended Complaint could possibly support such a contrived interpretation of Plaintiffs' allegations against BOP. To the contrary, the First Amended Complaint alleges that BOP knew of and approved the very policy/procedure GEO has used to deny Plaintiffs their requested religious diet, an allegation that is sufficient to state a claim against BOP under both RFRA and the First Amendment.

Plaintiffs' allegation that BOP had knowledge of GEO's unlawful policy/procedure would also give rise to an independently viable cause of action against BOP for burdening Plaintiffs' free exercise rights by electing not to act to provide relief from GEO's unlawful policy/procedure. In the context of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), a statute designed to extend the protection of religious liberties afforded by

RFRA to inmates incarcerated by state or local governments, the Fourth Circuit has expressly recognized that a government can impose a substantial burden on an inmate's exercise of religion through its *failure* to act: "We likewise follow the Supreme Court's guidance in the Free Exercise Clause context and conclude that, for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, *through act or omission*, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (citing *Thomas v. Review Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). *See also Covenant Media, supra*, 493 F.3d at 428 (finding that the government's *failure* to act (failure to process an application timely) constituted an injury sufficient to confer standing on the plaintiff independent of whether there would be any standing to contest the government's ultimate act of denying the application).

The Fourth Circuit has also observed that "once prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted." *Williams v. Griffin*, 952 F. 2d 820, 826 (4th Cir. 1991). *See also Bell v. State of Maryland*, 378 U.S. 226 (1964), decided under the Fourteenth Amendment, and stating that "state conduct which might be described as inaction can nevertheless constitute responsible state action." Moreover, in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court held that a defendant that has actual knowledge of a Constitutional violation and that knowingly fails to stop or prevent the unlawful conduct may be held liable.

To survive a motion to dismiss for failure to state a claim, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570 (2007). Moreover, in assessing a Rule 12(b)(6) issue, the district court accepts as true the factual allegations of the challenged complaint, and views those allegations in the light most favorable

to the plaintiff.  *Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. N.C. 2005).  Viewing the allegations of the First Amended Complaint in the light most favorable to Plaintiffs (rather than in the light most favorable to BOP, as BOP attempts to present them in its Memorandum), GEO's unlawful policy/procedure could not have been implemented in the first place or been used continuously over the past two years to enforce the ongoing deprivation of Plaintiffs' religious rights without BOP's action in approving it or electing to take no action to curtail the unlawful practice.  Thus, Plaintiffs have stated a claim against BOP upon which relief can be granted, and BOP's 12(b)(6) motion should be denied.

## CONCLUSION

Based on the foregoing arguments and authorities, Plaintiffs respectfully request this Court deny BOP's Motion to Dismiss.

Dated: March 15, 2011				Respectfully submitted,

  /s/ Frank S. Murray
Jack L. Lahr (D.C. Bar No. 25593)
Frank S. Murray (D.C. Bar No. 452063)
Matthew G. White (D.C. Bar No. 995808)
Julia L. German (D.C. Bar No. 999068)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W.
Suite 600
Washington, D.C. 20007-5109
(202) 672-5300 (telephone)
(202) 672-5399 (facsimile)
E-mail: jlahr@foley.com
E-mail: fmurray@foley.com
E-mail: mgwhite@foley.com
E-mail: jgerman@foley.com
*Counsel for Plaintiffs*

Philip J. Fornaci (DC Bar No. 434824)
Deborah M. Golden (DC Bar No. 470578)
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000 (telephone)
(202) 319-1010 (facsimile)
E-mail: Philip_Fornaci@washlaw.org
E-mail: Deborah_Golden@washlaw.org
*Counsel for Plaintiffs*

  /s/ Mary S. Pollard
Mary S. Pollard (N.C. Bar No. 20081)
Jason A. Miller (N.C. Bar No. 39923)
NORTH CAROLINA PRISONER LEGAL SERVICES, INC.
110 Wake Forest Road
Raleigh, NC 27604
(919) 856-2200 (telephone)
(919) 856-2223 (facsimile)
E-mail: mpollard@ncpls.org
E-mail: jmiller@ncpls.org
*Counsel for Plaintiffs*
Local Civil Rule 83.1 Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 15th day of March, 2011, filed the foregoing using CM/ECF, which will serve all required parties by sending a notice of Electronic Filing to all counsel of record.

                                                    /s/ Frank S. Murray
                                                    Frank S. Murray