IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3142-FL

| | | |
|---|---|---|
| LASCELLES SOMIE and ORAL MALCOLM, | ) ) ) | |
| Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| THE GEO GROUP, INC.; GEORGE SNYDER; ASSOCIATE WARDEN DAVID FARMER; CHAPLAIN D. BLEVINS; MS. WOLFE; and THE UNITED STATES OF AMERICA; THE BUREAU OF PRISONS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss (DE # 81) pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) filed on December 16, 2011, by defendant the Federal Bureau of Prisons ("BOP"). The matter was fully briefed, and issues raised in the motion to dismiss are ripe for adjudication. For the following reasons, the court grants in part and denies in part BOP's motion to dismiss.

### STATEMENT OF THE CASE

On October 6, 2010, plaintiffs Lascelles Somie ("Somie") and Oral Malcolm ("Malcolm"), both inmates at Rivers Correctional Institution ("Rivers") acting through counsel and with leave of court, submitted an amended complaint naming only The GEO Group, Inc. ("GEO")[1] and BOP as

---

[1] BOP has a procurement contract with the GEO Group under which it pays GEO to house federal inmates at Rivers. See Mathis v. GEO Group, Inc., No. 2:08-CT-21-D (E.D.N.C. Sept. 29, 2010).

defendants. The amended complaint alleges that plaintiffs' exclusion from Rivers' Religious Diet Program violates their rights under the First Amendment and Fifth Amendment to the United States Constitution and their rights pursuant to the Religious Freedom Restoration Act ("RFRA"). Plaintiffs' amended complaint seeks declaratory, injunctive, and monetary relief.

On November 8, 2010, GEO moved to dismiss plaintiffs' complaint on the grounds that plaintiffs failed to state a claim upon which relief may be granted because GEO, as a private corporation, may not be held liable for a First Amendment constitutional violation pursuant to the United States Supreme Court's decision in Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), and the Fourth Circuit's decision in Holly v. Scott, 434 F.3d 287 (4th Cir. 2006). Additionally, GEO asserted that it is not subject to RFRA. Likewise, on February 4, 2011, BOP filed a motion to dismiss, asserting that plaintiffs lack standing to sue BOP in this action because they failed to allege that BOP took any action to harm them. Alternatively, BOP alleged that plaintiffs failed to state a claim upon which relief may be granted because they failed to allege that BOP took any action to substantially burden their exercise of religion. In their response to BOP's motion, plaintiffs requested the opportunity to amend their complaint to clarify their allegations against BOP.

On May 12, 2011, the court issued an order staying discovery in this matter until after its resolution of the dispositive motions. On October 13, 2011, the court entered an order granting GEO's motion to dismiss, but denying BOP's motion to dismiss without prejudice. The court also allowed plaintiffs the opportunity to file an amended complaint. Finally, the court's order set a case management schedule.

On November 1, 2011, plaintiffs filed their second amended complaint. The second amended complaint contained requests for two forms of non-monetary relief: (1) a declaratory judgment "that

2

the removal and exclusion of Plaintiffs from participation in the Religious Diet Program at Rivers based solely on Plaintiffs' failure to comply with the requirement of mandatory weekly attendance at group religious services violate the rights of Plaintiffs under RFRA and the First Amendment to the United States Constitution to freely exercise their sincerely held religious beliefs"; and (2) a preliminary and permanent injunction to preclude BOP and GEO "from conditioning Plaintiffs' participation in, or continued eligibility for participation in, the Religious Diet Program at Rivers, or any other public or private prison facility under BOP management, supervision, or control, on Plaintiffs' attendance at weekly group religious services." Sec. Am. Compl. at 23. BOP subsequently moved to stay discovery, which this court granted.

On December 16, 2011, BOP filed a second motion to dismiss. BOP first argues that plaintiffs' action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because it is entitled to sovereign immunity for plaintiffs' Bivens and RFRA claims. Second, BOP argues that plaintiffs' claims for injunctive relief should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because they now are moot. The matter was fully briefed.

### STATEMENT OF FACTS

The court here incorporates the below portion of the statement of facts as set forth in its October 13, 2011, order.

> Viewing the facts in the light most favorable to plaintiffs, plaintiffs make the following allegations. Plaintiffs are incarcerated at Rivers Correctional Institution, which is a private for profit correctional facility located in Winton, North Carolina, owned and operated by GEO under contract with BOP. BOP uses both BOP-operated correctional facilities as well as privately-owned and operated facilities to house inmates in federal custody. The Attorney General may contract with private entities for the housing, care, and custody of federal inmates. See 18 U.S.C. § 4013(a). Moreover, under the National Capital Revitalization Act of 1997, Congress mandated that

BOP house, in private contract facilities, at least fifty (50) percent of the District of Columbia felony inmate population. See Pub. L. No. 105-33, § 11201, 111 Stat. 712, 734-37 (1997). Rivers currently houses approximately one thousand four hundred (1,400) inmates.

Both plaintiffs were raised in Jamaica and practice the Twelve Tribes of Israel branch of the Rastafarian religion. The Rastafarian faith is recognized by BOP, GEO, and officials at Rivers as a "religious belief" system. Many members of the Rastafarian faith observe a strict religious diet in accordance with the dietary laws of the Old Testament governing the consumption of fish, poultry, other meats, and excluding the consumption of pork. Plaintiffs' religious dietary needs may be met through provision of the "kosher meal" plan made available for Jewish inmates. GEO provides a 'kosher meal' option at the Rivers facility.

The kosher meal plan only is made available to inmates approved by GEO for admission to the Religious Diet Program. In order to participate in the Religious Diet Program at Rivers an inmate must request authorization by completing a form titled "Rivers Correctional Institution Authorization For Religious Diet Participation" and by participating in an interview with the Rivers Chaplain. The Chaplain is responsible for approving or disapproving requests for participation in the Religious Diet Program. Both plaintiffs completed a religious diet request form on August 17, 2007, and indicated a preference as Twelve Tribes Rastafarians and that the diet was required for their faith. The Rivers Chaplain approved both requests that same day.

The religious diet request form enumerates certain actions that will, under the policies employed at Rivers, result in an inmate's removal from participation in the Religious Diet Program and exclusion from that program for at least one year. These actions include: (1) being observed consuming non-Kosher mainline foods; (2) being observed purchasing non-Kosher commissary items which violate the inmate's religious diet; and (3) failure to attend three consecutive weekly services for the inmate's chosen faith, barring confinement in the segregated housing unit or medical facility. Plaintiffs, however, allege that GEO's Policy and Procedure Manual does not include all of the preceding conditions. Rather, the manual identifies only food-related transgressions as the sole violations of the Religious Diet Program, and does not require attendance at religious services for participation in the Religious Diet Program. Additionally, plaintiffs

4

allege that BOP's policy governing religious programs does not include a requirement that an inmate attend religious services to qualify for a religious diet.

In January 2009, plaintiffs were removed from the kosher diet plan and denied the ability to participate in the Religious Diet Program at Rivers because they had failed to attend three consecutive weekly services for their chosen faith. Sec. Am. Compl. at ¶ 52. At some point between January 2010 and July 2010, Rivers adopted a new departmental procedure regarding the provision of religious diets to inmates. Miner[2] Decl. ¶ 5. The new procedure amended the form used for participation in the Religious Diet Program omitting the statement that non-attendance at three consecutive weekly religious services would be treated as a program violation. Id. and Ex. 1. The form, however, continues to state that "actively attending/participating in the religious services of" an inmate's "chosen faith" is a requirement for participation in the Religious Diet Program. Id.

On November 29, 2010, Malcolm was transferred from Rivers to D. Ray James Correctional Facility in Folkston, Georgia. Malcolm subsequently was released from BOP's custody on April 3, 2012. See www.bop.gov.

## DISCUSSION

A. Standard of Review

Under Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When the Rule 12(b)(1) motion attacks the complaint as failing to state facts upon which subject matter jurisdiction may be

---

[2] Jonathan Miner, warden of Rivers Correctional Institution, submitted a declaration in support of BOP's motion to dismiss. Miner Decl. ¶ 1.

based, the facts in the complaint are assumed to be true and the plaintiff is afforded the same protections he or she would receive under a Rule 12(b)(6) motion. Adams, 697 F.2d at 1219. The Rule 12(b)(1) motion may attack alternatively the existence of subject matter jurisdiction in fact, apart from the complaint. Id. This type of attack is used when a court's limited jurisdiction precludes hearing the case brought. Adams, 697 F.2d at 1219. Because the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Id.

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

6

B.  Analysis

   1.  Sovereign Immunity

Plaintiffs concede that BOP is entitled to sovereign immunity for their claims for monetary damages for alleged constitutional violations. Plaintiffs, however, dispute BOP's contention that it is entitled to sovereign immunity for their claims for monetary relief pursuant to RFRA. In particular, plaintiffs argue that there is ample evidence that Congress intended RFRA to waive the federal government's sovereign immunity as to monetary damages because it made the federal government liable for a prevailing plaintiff's attorneys' fees. Plaintiffs, however, have not cited any case law stating that the federal government waived sovereign immunity as to monetary damages pursuant to RFRA.

Plaintiffs, instead, concede that there is no controlling Fourth Circuit or United States Supreme Court precedent specifically addressing whether RFRA's waiver of the federal government's sovereign immunity extends to monetary damages. Plaintiffs further acknowledge that the federal courts that have addressed whether RFRA's waiver of sovereign immunity extends to monetary damages have concluded that the statute's reference to "appropriate relief" is not sufficiently unequivocal as to waive the federal government's sovereign immunity with respect to monetary damages. See, e.g., Oklevueha Native Am. Church of Hawaii, Inc. v. Holder, __ F.3d __, 2012 WL 1150259 (9th Cir. 2012); Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025-26 (D.C. Cir. 2006). Plaintiffs also acknowledge that both the Fourth Circuit and the Supreme Court have found that similar language within the Religious Land Use and Institutionalized Persons Act ("RLUIPA") does not unequivocally waive a state government's sovereign immunity under the Eleventh Amendment to the United States Constitution as to a claim for monetary damages. See

Sossamon v. Texas, 131 S.Ct. 1651, 1659 (2011); Madison v. Virginia, 474 F.3d 118, 131 (4th Cir. 2006). Based upon the foregoing, the court finds that plaintiffs' RFRA claims are barred pursuant to sovereign immunity.

2.  Injunctive Relief

The court first addresses Malcolm's request for injunctive relief. Malcolm was released from BOP custody on April 3, 2012.[3] www.bop.gov. Generally, an inmate's transfer or release from a particular prison moots his claims for injunctive or declaratory relief with respect to his incarceration there. See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007); see also, Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has not alleged otherwise. Thus, Malcolm's claims for declaratory and injunctive relief are DISMISSED as moot.

The court next determines whether Somie's claims for injunctive relief are moot. Federal courts may only decide actual cases or controversies. See U.S. Const. art. III, § 2. A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quotation omitted). To satisfy the Article III case or controversy requirement, "[a] litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70-71 (1983). When a case or controversy ceases to exist, the litigation becomes moot and the federal court no longer possesses jurisdiction to proceed. Id.

---

[3] BOP contends its motion to dismiss that Malcolm's claim for injunctive relief is moot because he was transferred from Rivers to another prison on November 29, 2010. However, Malcolm was released from BOP custody subsequent to the completion of the briefing in this matter.

8

BOP argues that Somie's claim for injunctive relief should be dismissed as moot because in 2010, GEO amended its religious diet policy omitting the language on the form stating that failure to attend three consecutive weekly services would result in removal from the Religious Diet Program. Somie, however, contends that his action against BOP is not mooted by Rivers amending its policy because the language in the new form reflects that Rivers continues to condition participation in the Religious Diet Program on attending or participating in religious services, and that he continues to be denied a religious diet.[4]

In response, BOP contends that the denial of Somie's current request to participate in the Religious Diet Program is not based upon Somie's failure to attend religious services. Instead, Somie's denial of participation is based upon a BOP policy stating that only Jewish inmates are entitled to kosher meals and that Rastafarian inmates only are eligible for a vegetarian diet per Technical Training Manual ("TRM")[5] 5306.01. Williams Decl.[6] ¶¶ 4-6, 9. Somie argues that Rivers' new rationalization for denying his requested religious diet is irrelevant to the issue of mootness of his claim because he still is being denied a kosher diet, the religious diet mandated by his sincerely held religious beliefs. The parties agree that Somie previously was provided a kosher diet, contradicting BOP's position that Rastafarians are not entitled to kosher diets under TRM[7]

---

[4] The current Religious Diet Program form states that "actively attending/participating in the religious services of" an inmates "chosen faith" is a requirement for participation in the Religious Diet Program. Miner Decl., Ex. 1.

[5] BOP published a TRM 5306.01 entitled Inmate Religious Beliefs and Practices: Practical Guidelines for Administration of Inmate Beliefs and Practices. Williams Decl. ¶ 4.

[6] Claudia Williams, the Chaplain at Rivers Correctional Institution, submitted an affidavit in support of BOP's reply brief.

[7] BOP published a TRM 5306.01 entitled Inmate Religious Beliefs and Practices: Practical Guidelines for Administration of Inmate Beliefs and Practices. Williams Decl. ¶ 4.

9

5360.01.[8] Somie further asserts that this new reasoning for denying him a kosher diet raises factual issues that are outside of the pleadings and to which he has not had the opportunity to respond. The court agrees.

Based upon the fact that Somie has presented facts to show that he has not received the relief he requested and because BOP's new rationale for denying Somie a religious diet raises factual issues outside of the pleadings, the court finds that BOP has not met its burden demonstrating that the challenged conduct cannot reasonably be expected to recur. Thus, BOP's motion to dismiss this claim is DENIED.[9]

## CONCLUSION

For the foregoing reasons, BOP's motion to dismiss (DE # 81) is GRANTED in part and DENIED in part. BOP's motion is DENIED as to Somie's request for injunctive relief. The remainder of BOP's motion is GRANTED.

SO ORDERED, this the 7th day of May, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[8] The court notes that GEO's responses to plaintiffs' grievances indicate that plaintiff was removed from the Religious Diet Program because he missed three consecutive weekly group religious services. Sec. Am. Compl., Exs. 5, 6.

[9] Somie states that he is "entitled to address [BOP's] rationalizations, or excuses, if necessary, by amending the Second Amended Complaint. If Somie finds it necessary to amend his complaint, he must request leave of court.

10